CLARA R. SMIT, ESQ.
ATTORNEY AT LAW
100 HORIZON CENTER BOULEVARD
HAMILTON, NJ 08691
(732) 843-6600
ATTORNEY FOR THE PLAINTIFF

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

---

J.C.,

    **Plaintiff**

v.

ROWAN UNIVERSITY SCHOOL OF
OSTEOPATHIC MEDICINE and
ROWAN UNIVERSITY,

    **Defendants**

---

CIVIL ACTION NO.:

**COMPLAINT AND JURY DEMAND**

Plaintiff J. C. (hereinafter "Plaintiff") brings this complaint against the Defendants, Rowan University and Rowan University School of Osteopathic Medicine (hereinafter "RowanSOM" or "Defendant"), alleging discrimination based on disability in violation of the law.

## INTRODUCTION

1. This is an action for injunctive, monetary, and declaratory relief against the Defendants, based on their discriminatory conduct against Plaintiff, an individual with disabilities.

2. Defendants have discriminated against Plaintiff by failing to accommodate Plaintiff's disabilities in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.* (hereinafter "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*

(hereinafter "Section 504"), and New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*, (hereinafter "NJLAD"), and subsequently dismissing Plaintiff from RowanSOM.

## JURISDICTION

3. These claims arise under the ADA and Section 504, and this Court has subject matter jurisdiction based on a federal question under 28 U.S.C. §§1331 and 1343(a)(4). This Court also has jurisdiction pursuant to: (1) 42 U.S. C. § 2000a, providing for civil actions in this Court by any person subjected to discrimination on the basis of disability in violation of Title II and III of the ADA and (2) 28 U.S.C. § 1343 for any civil rights action authorized by law.

4. This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. §2201(a) and further relief pursuant to 28 U.S.C. §2202.

5. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. §1391, in that acts of discrimination have taken place in this District and Plaintiff's permanent residence is within this District.

## PARTIES

6. Plaintiff is a 35 year-old permanent resident of Jersey City, New Jersey.

7. Plaintiff is a qualified individual with disabilities under the ADA, Section 504, and NJLAD, and was entitled to the leave and extension accommodations that he requested and which were recommended by his doctors. Plaintiff's diagnosed impairments substantially limit him in the performance of numerous major life activities including, but not limited to, reading, writing, concentrating, thinking, learning, working, and taking tests. Plaintiff's impairments substantially limit him in the operation of brain and neurological functioning.

8. RowanSOM is a public medical school located in Stratford, New Jersey, and is a school of Rowan University, a public university located in Glassboro, New Jersey.

9. Upon information and belief, Defendants are recipients of federal financial assistance for purposes of Section 504.

## FACTUAL ALLEGATIONS

10. Plaintiff commenced his medical education at RowanSOM in the fall of 2011.

11. After Plaintiff's first year of medical school, RowanSOM granted Plaintiff a three month personal leave of absence following a loss in his personal life. Plaintiff successfully remediated his first year of courses and from that point onward he achieved good grades.

12. Plaintiff first attempted the COMLEX Level 1 exam (hereinafter "COMLEX") on September 3, 2014. He failed to pass on the first attempt.

13. After successfully completing his online 6-week COMLEX review program Plaintiff attempted the COMLEX for a second time on February 4, 2015, but was unable to earn a passing grade. He was perplexed by this because he was doing very well in his proctored practice exams, but upon further reflection realized that he experienced significant anxiety during the actual exam.

14. The Student Academic Progress Committee (hereinafter "SAPC") at RowanSOM mandated that Plaintiff remain off of rotations until he retook the COMLEX. The school presented him with the option to go on a medical leave of absence from March 16, 2015 to May 18, 2015 so that he could work with a professional to evaluate the reasons for his exam performance issues. The SAPC also directed Plaintiff to take a 6-week course to run from May 18, 2015 through June 28, 2015, with the expectation that he would retake the COMLEX shortly thereafter.

15. Plaintiff subsequently consulted several doctors and learned that he has Generalized Anxiety Disorder, Panic Disorder, and Obstructive Sleep Apnea. Plaintiff also

experienced symptoms of depression.  Plaintiff provided Defendant documentation verifying the existence and substantial limitations caused by his diagnosed disabilities.

16.     In the midst of his medical treatment, Plaintiff believed that enrolling in a more comprehensive 14-week COMLEX preparation course from May 18, 2015 to August 23, 2015 would assist him with his review and allow him additional time to work with his doctors to develop an effective treatment regimen, and requested an extension of Defendant's deadline to take the COMLEX.  His advisor informed him that he would need to make this request at a SAPC hearing on April 21, 2015.

17.     Plaintiff arrived to the SAPC meeting 15-minutes late due to car trouble and offered documentation to verify his car trouble, but the SAPC refused to see him and decided that Plaintiff would only be allowed to take the shorter COMLEX course which would run from May 18, 2015 through June 28, 2015.

18.     Plaintiff reported to take the COMLEX on July 14, 2015 and experienced severe diarrhea and abdominal cramping that forced him to suffer significant pain and discomfort, and to use the bathroom several times during the exam.  Plaintiff withdrew from the exam after the second test block.

19.     On July 15, 2015 the Chairman of the SAPC committee, via email, informed Plaintiff that his final deadline to take the COMLEX was July 30, 2015, and advised Plaintiff to "make every opportunity to optimize your health with your physicians to ensure your ability to complete the exam on your next attempt."  It should be noted that this deadline given by the SAPC Chairman was different from the August 31, 2015 deadline later calculated by the medical school's registrar office, and it exacerbated the effects of Plaintiff's anxiety and panic disorder.

20.     On July 29, 2015, the evening before Plaintiff was scheduled to take the

COMLEX, Plaintiff experienced anxiety and stress, and his nocturnal treatment for his sleep apnea was disrupted. He was unable to gain restful sleep and was very fatigued.

21.     Plaintiff sat for the COMLEX on July 30, 2015 and again experienced a panic attack, and severe gastrointestinal upset during the exam. Plaintiff immediately contacted the National Board of Osteopathic Medicine to inquire about whether the July 30, 2015 exam could be voided. By email dated August 18, 2015 the NBOME informed Plaintiff that the July 30, 2015 exam had been cancelled.

22.     By letter dated August 4, 2015 Abby Kurien.MD., Plaintiff's psychiatrist, recommended that he be allowed to cancel his July 30, 2015 COMLEX score and be granted permission to retake the exam once his medical therapy became effective, which Dr. Kurien estimated would be a minimum of four weeks.

23.     By email dated August 18, 2015, the National Board of Osteopathic Medical Examiners (hereinafter "NBOME") also advised Plaintiff to consider applying for test accommodations for future administrations of the COMLEX.

24.     By email dated August 20, 2015, the RowanSOM registrar office informed Plaintiff that he only had three semesters of medical school left.

25.     On August 20, 2015 Plaintiff contacted Assistant Dean Kathryn C. Lambert, RowanSOM, and requested a medical leave of absence and extension to take the COMLEX for the same reasons previously articulated. Dean Lambert directed Plaintiff to raise his concerns at an SAPC meeting scheduled for September 15, 2015.

26.     By letter dated August 21, 2015 Plaintiff received a letter from Defendants informing him that he was required to appear before the SAPC on September 15, 2015 for a dismissal hearing because he would not be able to complete his academic program within a 5-

year timeframe.  .

27. Plaintiff attended the dismissal hearing and was given a mere 10-12 minutes to present his case, which was not nearly enough time and caused Plaintiff to feel anxious and rushed.  Plaintiff provided the SAPC eighty-six pages of medical documents and a personal statement describing the actions that he and his doctors needed to take to manage his health. Plaintiff once again requested a medical leave of absence and extension to take the COMLEX, but later learned from a member of the SAPC that, after Plaintiff left, his request for accommodations was never voted on by the committee.

28. By letter dated September 21, 2015, Plaintiff received a letter from the SAPC recommending his dismissal to the Dean for "failure to complete all required coursework within the maximum timeframe specified for the degree program (not including approved leaves of absence)."

29. By letter dated September 23, 2015, Plaintiff appealed the SAPC's recommendation to the Dean that he be dismissed and submitted supporting documentation. Plaintiff was given 30-minutes to present his case to the Dean and he once again requested accommodations in the form of a leave of absence and extension to take the COMLEX.

30. On September 29, 2015 the Dean informed Plaintiff that he supported the SAPC's recommendation for dismissal.

31. By letter dated September 29, 2015 Plaintiff contacted Assistant Dean Lambert requesting a leave of absence and extension to take the COMLEX.  This request was supported by letters from Plaintiff's doctors (Dr. Abby Kurien, Dr. Jeffrey Tokazewski, Dr. Howard Siegel, Dr. Tanui Bhatnagar, and others) who recommended a medical leave of absence from August 20, 2015 through October 16, 2015. so that Plaintiff's treatment regimen, consisting of medication

and cognitive behavioral therapy, would have time to become effective.

32. RowanSOM rejected the accommodations (a medical leave of absence and extension to take the COMLEX) that were requested by Plaintiff and recommended by his doctors.

33. By email dated October 1, 2015, Assistant Dean Lambert told Plaintiff that his request was denied because leaves of absence cannot be used to avoid dismissal for academic or disciplinary reasons.

34. Defendants' agents made disparaging and offensive remarks to Plaintiff about his disabilities during one of the administrative hearings that he was compelled to attend.

35. Defendants knowingly required Plaintiff to take the COMLEX, multiple times, before Plaintiff's treatment could reach a sufficiently therapeutic state.

36. When Plaintiff could not pass the COMLEX by the date(s) arbitrarily selected by Defendants, Defendants dismissed Plaintiff from the medical school.

37. Defendants alleged in multiple letters to Plaintiff's attorneys that granting Plaintiff's requested leave of absence and extension to take and pass the COMLEX would have been an unacceptable relaxation of RowanSOM's academic standards because he would have then exceeded the school's alleged five-year program completion "requirement."

38. Defendants refused to follow their own published policies.  For example, RowanSOM's 2014-2015 Handbook states that students are normally limited to two leaves of absences, totaling two years.  Plaintiff had not exceeded two years of approved leave.  The Handbook also describes standard tracks and timelines for completing the D.O. program and clearly states that the general policy is that approved leaves of absences do not count toward the standard five-year completion requirement.  RowanSOM's 2014-2015 Handbook also states that

Defendants offers a lightened course load track which allows students 6 years to complete the D.O. program.  What Plaintiff requested would not have violated or relaxed RowanSOM's standard policies and procedures.  Nevertheless, all relevant laws require the modification of policies, practices and procedures so as to not result in a discriminatory outcome.

39. Following his dismissal, Plaintiff retained counsel and sought readmission to RowanSOM.  RowanSOM offered readmission on the condition that Plaintiff retake three years' worth of medical school courses that he already successfully completed.  This offer for readmission was punitive and discriminatory and Plaintiff, owing in excess of $400,000.00 in student loans, could not accept these unjust terms of readmission.

40. Plaintiff has been out of medical school since the fall of 2015 and has incurred significant student loan debt, legal expenses, and medical expenses with no medical degree to show for it.

41. Plaintiff requires testing accommodations for the COMLEX (the same accommodations that he has been granted from the Law School Admission Council and the Graduate Management Admission Council following his dismissal from RowanSOM), but he cannot apply for these accommodations because he is no longer enrolled in a medical school.

42. Plaintiff is unable to retake the COMLEX (even without accommodations) because he is no longer enrolled in a medical school.

43. Defendant's actions violate the ADA as well as state and local laws and regulations.  ADA regulations state:

    a. "The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.  "Substantially limits" is not meant to be a demanding standard." 29 C.F.R. §

1630.2(j)(1)(i).

b. "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii).

c. "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(iii).

d. The determination of whether an impairment substantially limits a major life activity requires an individualized assessment. However, in making this assessment, the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for "substantially limits" applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(1)(iv).

e. "The comparison of an individual's performance of a major life activity to the performance of the same major life activity by most people in the general population usually will not require scientific, medical, or statistical analysis. Nothing in this paragraph is intended, however, to prohibit the presentation of scientific, medical, or statistical evidence to make such a comparison where

appropriate." 29 C.F.R. § 1630.2(j)(1)(v).

f. "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 29 C.F.R. § 1630.2(j)(1)(vi).

g. "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 29 C.F.R. § 1630.2(j)(1)(vii).

h. "An impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment." 29 C.F.R. § 1630.2(j)(1)(viii).

i. "[I]n determining whether an individual is substantially limited in a major life activity, it may be useful in appropriate cases to consider, as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity." 29 C.F.R. § 1630.2(j)(4)(i).

j. "Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function. In addition, the non-ameliorative effects of mitigating measures, such as negative side effects of

    medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(4)(ii).

  k. "In determining whether an individual has a disability under the "actual disability" or "record of" prongs of the definition of disability, the focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population." 29 C.F.R. § 1630.2(j)(4)(iii)

  l. "Any [public or] private entity that offers a course covered by this section must make such modifications to that course as are necessary to ensure that the place and manner in which the course is given are accessible to individuals with disabilities… Required modifications may include changes in the length of time permitted for the completion of the course, substitution of specific requirements, or adaptation of the manner in which the course is conducted or course materials are distributed." 28 C.F.R. § 36.309(c)(1) – (2).

44. Section 504 enforcement regulations state that schools shall not "Deny a qualified [person with a disability] the opportunity to participate in or benefit from the aid, benefit, or service… Afford a qualified [person with a disability] an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others… Provide a qualified [person with a disability] with an aid, benefit, or service that is not as effective as that provided to others." 34 C.F.R. §104.4(b). These regulations also state that "In its course examinations or other procedures

for evaluating students' academic achievement in its program, a recipient to which this subpart applies shall provide such methods for evaluating the achievement of students who have a handicap that impairs sensory, manual, or speaking skills as will best ensure that the results of the evaluation represents the student's achievement in the course." 34 C.F.R. §104.44 (c).

45. Defendants' denial of Plaintiff's reasonable and documented requests for accommodations was deliberately indifferent to Plaintiff's civil rights under the applicable laws.

## FIRST CLAIM

### (Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*)

46. Plaintiff hereby incorporates by reference paragraphs 1 through 45of this Complaint as set forth herein.

47. Plaintiff is an individual with a disability in that he experiences a physical or mental impairment, which substantially limits one or more major life activities, including, but not limited to, reading, writing, concentrating, learning, working, taking tests, and the operation of the major bodily functions of the brain and neurological system. 42 U.S.C. § 12102 (2)(B). Because of his impairment he required a medical leave of absence and extension of time take the COMLEX.  This extension would have also afforded Plaintiff an opportunity to apply for testing accommodations in order to take the COMLEX on a level playing field.

48. In amending the ADA in 2008, Congress mandated that the Equal Employment Opportunity Commission (EEOC) issue regulations restoring the applicability of the ADA to those whom Congress originally intended to protect. 42 U.S.C. §12010(b)(6).

49. EEOC regulations provide that "[t]he primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the

definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted…" 28 U.S.C. §1630.1(c)(4).

50. The ADA amendments expressly rejected earlier case law because previous judicial interpretations of what constituted a disability had created an inappropriately high level of limitation necessary to obtain coverage. 42 U.S.C. § 12102(4)(B) (incorporating findings and purposes of the ADAAA).

51. Under the ADA, public postsecondary institutions make modifications to policies, practices and procedures, and may not utilize "standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability 42 U.S.C. §§ 12112(b), 12201(f).

52. The modifications that Plaintiff requested would not have imposed a fundamental alteration but, rather, would level the field so as to allow his medical knowledge and abilities to be fairly and accurately measured and to continue with his medical studies.

53. Defendants have thus discriminated against Plaintiff on the basis of his disability by intentionally denying him an equal opportunity to demonstrate his medical knowledge and skill in violation of the ADA.

54. Defendants' policies and practices violated Plaintiff's rights under the ADA and the regulations promulgated thereunder. Defendants' discriminatory policies and practices include, but are not limited to, its:

   a. Failure to grant accommodations when Plaintiff submitted the requisite documentation;

   b. Failure to defer to or give considerable weight to Plaintiff's clinicians' recommendations;

  c. Failure to engage in good faith in the interactive process to consider and implement effective reasonable accommodations for Plaintiff's disabilities;

  d. Dismissing Plaintiff from medical school;

  e. Offering Plaintiff discriminatory and punitive readmission terms; and

  f. As a result of Defendants' actions Plaintiff has experienced sleep disturbance, fatigue, muscle tension, and headaches.

55. As a result of the Defendants' violations of the ADA, Plaintiff has suffered or will suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

WHEREFORE, Plaintiff requests relief as set forth below.

## SECOND CLAIM

### (Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq.)

56. Plaintiff hereby incorporates by reference paragraphs 1 through 55 of this Complaint as set forth herein.

57. Plaintiff is an individual with disabilities. His diagnosed impairments, Generalized Anxiety Disorder, Panic Disorder, and Obstructive Sleep Apnea, substantially limits the major life activities of reading, learning, concentrating, working, and taking tests.

58. Plaintiff is qualified under the Rehabilitation Act in that he can meet the academic and technical standards for admission to or participation in RowanSOM's program.

59. Defendants are recipients of federal financial assistance.

60. Defendants' activities thus are subject to the anti-discrimination requirements of Section 504 of the Rehabilitation Act.

61. U.S. Department of Education regulations enforcing protections for students with disabilities in postsecondary educational programs specifically provide that accommodating an individual with a disability may require the covered entity to change the length of the time for an exam and/or the manner in which the examination is given, or make "changes to the length of time permitted for the completion of degree requirements." 34 C.F.R. §104.44.

62. Defendants discriminated against Plaintiff solely on the basis of disability. Defendants failed to make modifications to their policies, practices, and procedures to ensure that Plaintiff had equal access to and full enjoyment of its medical school program.

### THIRD CLAIM

### DEFENDANTS VIOLATED THE NEW JERSEY LAW AGAINST DISCRIMINATION

63. Plaintiff hereby incorporates by reference paragraphs 1 through 62 of this Complaint as set forth herein.

64. Defendant's conduct is in violation of the N.J.S.A. 10:5-1, et seq., N.J.S.A.

### FOURTH CLAIM

### (Declaratory Relief)

65. Plaintiff hereby incorporates by reference paragraphs 1 through 64 of this Complaint as set forth herein.

66. A present and actual controversy exists between Plaintiff and Defendants concerning their rights and respective duties. Plaintiff contends that Defendants violated and continues to violate his rights under the ADA, Section 504, and NJLAD. Based upon information and belief, Defendants deny these allegations, thus declaratory relief is necessary and appropriate.

67.     Plaintiff seeks a judicial declaration of the rights and duties of the respective parties accordingly.

WHEREFORE, Plaintiff requests relief as set forth below.

### **RELIEF REQUESTED**

WHEREFORE, Plaintiff prays for judgment as follows:

A.     Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' practices, policies and procedures have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act, Title II and III of the Americans with Disabilities Act, and the New Jersey Law Against Discrimination;

B.     Permanently enjoin Defendants from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendants' services or which deny Plaintiffs communication with Defendants. Enter a permanent injunction ordering Defendants to readmit Plaintiff to RowanSOM on a "leave of absence" status so that the NBOME considers him eligible to apply for and obtain COMLEX testing accommodations; and allow Plaintiff the opportunity to secure and test with the COMLEX testing accommodations recommended by his doctors and his record be modified to remove references to academic jeopardy occasioned by RowanSOM's failure to provide Plaintiff with the accommodations recommended by his physicians; and allow him to resume rotations immediately upon passage of COMLEX;

C.     Enter judgment against the Defendants awarding Plaintiff full recovery of his medical school tuition, with interest, which is currently in excess of $400,000.00;

D.     Enter judgment against the Defendants awarding Plaintiff recovery of reasonable attorney's fees, costs and expenses incurred in pursuing his rights and in bringing and prosecuting this litigation. The costs incurred thus far are in excess of $25,000 including, but not

limited to multiple forced COMLEX registrations, letters and statement from his doctors, and the need to engage counsel in pursuing his civil rights;

    E.    Enter judgment against the Defendants awarding Plaintiff such compensatory damages and punitive damages as may be proven by Plaintiff and to which he is entitled; and

    F.    Award for such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award

        Respectfully submitted,

        /s/ Clara R. Smit, Esq.
        Clara R. Smit, Esq.
        Attorney for Plaintiff

## CERTIFICATION

Pursuant to Rule 4:5-1, I, Clara R. Smit, certify that I am a member of the firm of Clara R. Smit, attorney for the Plaintiff stated herein. To my information and belief, the matter in controversy is not the subject of any other action pending in any other Court, or of a pending arbitration proceeding and no other action or arbitration proceeding is being contemplated. At this time, the Plaintiff knows of no other party who should be joined in this action.

        /s/ Clara R. Smit
        Clara R. Smit, Esq.
        Attorney for Plaintiff

Dated: April 20, 2016