UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

|  |  |
|---|---|
| J.C., | : Document Electronically Filed |
| | : |
| Plaintiff, | : Civil Action |
| | : |
| | : Civil Action No.: |
| v. | : 1:17-CV-02778 (RBK/KMW) |
| | : |
| ROWAN UNIVERSITY SCHOOL OF | : |
| OSTEOPATHIC MEDICINE and ROWAN | : Returnable:  August 21, 2017 |
| UNIVERSITY, | : |
| | : |
| Defendants. | : |
| | : |

---

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ROWAN UNIVERSITY
SCHOOL OF OSTEOPATHIC MEDICINE AND ROWAN UNIVERSITY'S MOTION TO
DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

CHRISTOPHER S. PORRINO
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Rowan University and
   Rowan University School of
   Osteopathic Medicine
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton NJ   08625-0112
(609) 777-4861
Jennifer.McGruther@law.njoag.gov

Jennifer J. McGruther
Deputy Attorney General
   On the Brief

# TABLE OF CONTENTS

PRELIMINARY STATEMENT........................................... 1

PROCEDURAL HISTORY AND STATEMENT OF FACTS...................... 2

    A. Rowan University School of Osteopathic Medicine
       is a Competitive Medical School with Ongoing Degree
       Requirements............................................ 2

    B. J.C.'s Education at Rowan
       School of Osteopathic Medicine......................... 5

LEGAL ARGUMENT................................................ 11

  POINT I

    J.C. FAILS TO STATE A CLAIM UNDER THE ADA OR REHABILITATION
    ACT BECAUSE HE DOES NOT SUFFICIENTLY ALLEGE THAT HE REQUESTED
    AN ACCOMMODATION OR THAT ROWAN DISCRIMINATED AGAINST HIM ON
    THE BASIS OF A DISABILITY. ................................ 12

    A. Rowan Does Not Have Authority to Grant J.C.'s Requested
       Accommodations for the COMLEX Level 1. ................ 14

    B. J.C. Did Not Request an Accommodation from Rowan. ..... 15

    C. Even if J.C. was Previously Diagnosed with a Disability,
       Rowan Had No Notice or Knowledge of J.C.'s Alleged
       Disability or Desire for an Accommodation. ........... 18

  POINT II

    J.C.'S NJLAD CLAIM MUST BE DISMISSED BECAUSE HE DID NOT
    PROVIDE ANY STATEMENT OF THE CLAIM SHOWING THAT HE IS
    ENTITLED TO RELIEF. ....................................... 21

  POINT III

    J.C.'S CLAIM FOR DECLARATORY RELIEF MUST BE DISMISSED BECAUSE
    IT IS A REQUEST FOR A REMEDY, NOT A CAUSE OF ACTION. ...... 23

CONCLUSION................................................... 24

## **TABLE OF AUTHORITIES**

**Cases**

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) .................................... 11, 12

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007) .................................... 12, 22

Bibber v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.,
  No. 15-4987, 2016 U.S. Dist. LEXIS 48181
  (E.D. Pa. April 11, 2016) ................................. 14

Chambers v. Sch. Dist. of Phila. Bd. of Educ.,
  587 F.3d 176 (3d Cir. 2009) ............................... 13

Connelly v. Lane Constr. Corp.,
  809 F.3d 780 (3d Cir. 2016) ............................... 12

Cunningham v. Univ. of New Mexico Bd. of Regents,
  531 Fed. Appx. 909 (10th Cir. 2013) ................... 14, 18

D.E. v. Cent. Dauphin Sch. Dist.,
  765 F.3d 260 (3d Cir. 2014) ............................... 13

Ferrell v. Howard Univ.,
  No. 98-1009, 1999 U.S. Dist. LEXIS 20900
  (D.D.C. Dec. 2, 1999) ...................... 14, 16, 17, 18

In re Burlington Coat Factory Sec. Litig.,
  114 F.3d 1410 (3d Cir. 1997) ............................... 2

Kabbaj v. Google Inc.,
  592 Fed. Appx. 74 (3d Cir. 2015) .......................... 23

Lee Dodge, Inc. v. Kia Motors America, Inc.,
  No. 10-5939, 2011 WL 3859914 (D.N.J. Aug. 31, 2011) ........ 23

Nathanson v. Medical College of Pennsylvania,
  926 F.2d 1368 (3d Cir. 1991) .............................. 21

Neuss v. Rubi Rose, LLC,
  No. 16-2339 2017 WL 2367056 (D.N.J. May 31, 2017) .......... 23

Phillips v. Cnty. of Allegheny,
  515 F.3d 224 (3d Cir. 2008) ............................... 22

Sarpolis v. Tereshko,
  625 Fed. Appx. 594 (3d Cir. 2016) .......................... 22

Schmidt v. Skolas,
  770 F.3d 241 (3d Cir. 2014) ................................. 3

Schneider v. Shah,
  507 Fed. Appx. 132 (3d Cir. 2012) ..................... 13, 20

Shaywitz v. Am. Bd. of Psychiatry & Neurology,
  848 F. Supp. 2d 460 (S.D.N.Y. 2012) ................... 13, 21

Shurb v. Univ. of Tex. Health Science Ctr.
  at Houston-School of Medicine,
  63 F. Supp. 3d 700 (S.D. Tex. 2014) ....................... 20

Wynne v. Tufts Univ. Sch. of Med.,
  976 F.2d 791 (1st Cir. 1992) .......................... 13, 21

**PRELIMINARY STATEMENT**

J.C., a former student at Rowan University School of Osteopathic Medicine, was dismissed from medical school for his failure to complete the degree requirements within five years. Faced with academic dismissal, J.C. requested a leave of absence, which would toll the time for him to complete his degree requirements. Because University policy prohibits using a leave of absence to avoid dismissal, that request was denied. J.C. now sues the University for its alleged discrimination based on disability. But J.C. did not inform the University that he had a disability or desired an accommodation until he faced academic dismissal. Under the circumstances, J.C.'s request for a leave of absence and extension of time to complete his degree requirements does not constitute an accommodation. Thus Rowan did not deny J.C. an accommodation.

Before his dismissal, J.C. failed the required licensing exam twice. According to University policy, students who fail the same licensing exam three times are dismissed. Following his second failure, J.C. took a leave of absence, a review course, and time for independent study. He then attempted the licensing exam two more times. But on both occasions he cancelled his scores because of an unforeseen "acute illness." At that time, he did not inform Rowan that any alleged

1

disability was the source of his illness. Nor did he request an accommodation. Thus Rowan was unaware of any disability and could not have discriminated against J.C. on that basis.

### PROCEDURAL HISTORY AND STATEMENT OF FACTS[1]

A.   **Rowan University School of Osteopathic Medicine is a Competitive Medical School with Ongoing Degree Requirements.**

Rowan University School of Osteopathic Medicine is a four-year medical college that culminates, for successful students, with a Doctor of Osteopathic Medicine degree. It has a competitive admission process. To qualify for admission, candidates must sit for the Medical College Admission Test (MCAT), among other requirements. (Certification of Jennifer J. McGruther dated July 17, 2017 ("McGruther Cert."), Exh. A, Rowan University School of Osteopathic Medicine Education Handbook, Revised November 2014 ("Handbook") at 106).[2] The medical school

---

[1] The Procedural History and Statement of Facts have been combined because they are intertwined and for the court's convenience.

[2] Generally, to decide a motion to dismiss, a court will consider only allegations contained in the complaint, attached exhibits and matters of public record. However, "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (alteration in original). All of the documents Rowan relies on in this motion are integral to the complaint, because J.C.'s allegations either expressly refer to them or rely on their contents. Excerpts of the Handbook are referenced in ¶¶31 and 38 of the Complaint and are also included in J.C.'s submissions in August and September 2015 to the

also includes milestones throughout the student's education to ensure that students are satisfactorily advancing. Rowan's traditional curriculum leading to the Doctor of Osteopathic Medicine degree is four years: two years of coursework followed by two years of clinical experience ("rotations") and courses or clerkships. (Id., Handbook at 15-17). Students are required to complete their medical education within five years. (Id., Handbook at 86).

In addition to passing their classes and successfully completing rotations, students must pass the three-level Comprehensive Osteopathic Medical Licensing Examination (COMLEX). (McGruther Cert., Exh. A, Handbook at 9). The COMLEX is administered by the National Board of Osteopathic Medical Examiners, Inc. Students are eligible to take the COMLEX Level 1 exam upon satisfactory completion of their first year of medical school with the Dean's approval. (Id., Handbook at 79). Typically, students take the COMLEX Level 1 exam at the conclusion of their second year of medical school.[3] (Id., Handbook at 79).

---

Student Academic Progress Committee and Assistant Dean Lambert, referenced in paragraphs 27 and 31 of the Complaint, respectively. In addition, the court may take judicial notice of this public document. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).
[3] Subsequent to J.C.'s dismissal, RowanSOM's policy changed. Students are now required to pass the COMLEX Level 1 before

Consequences for failure to satisfactorily advance through the medical education--that is, failure to pass the COMLEX or complete degree requirements within five years-- include academic warning, academic probation, and ultimately dismissal from the medical school. Specifically, students who fail any one COMLEX examination will be placed on Academic Warning. (McGruther Cert., Exh. A, Handbook at 81). Academic Warning requires, among other things, that the student meet with the Center for Teaching and Learning (CTL) staff and complete an agreed upon-learning program. (Id., Handbook at 81). Students who fail the COMLEX Level 1 are also required to discontinue their rotations until they retake the exam. (Id., Handbook at 79). Students who fail the same COMLEX two times will be placed on Academic Probation. (Id., Handbook at 82). Academic Probation lasts at least one year or until the student has passed the examination. (Id.) A student on Academic Probation, among other things, must meet with the Student Academic Progress Committee,[4] must comply with all Committee recommendations, and must participate in an individualized remediation program designed with the CTL. (Id.) Students who fail to meet all requirements of Academic Probation may be recommended for dismissal. (Id.)

---

beginning their third year rotations. (McGruther Cert., Exh. A, Handbook at 79).

[4] The Student Academic Progress Committee includes faculty and elected student members. (McGruther Cert., Exh. A, Handbook at 80).

Other reasons for dismissal include a student's failure of the same COMLEX three times and a student's failure to complete all coursework within the maximum specified timeframe (not including approved leaves of absence). (Id., Handbook at 80, 85-86).

Students may request a medical or personal leave of absence during their education at the medical school. (McGruther Cert., Exh. A, Handbook at 83). But leaves of absence cannot be used to avoid dismissal for academic or disciplinary reasons. (Id.).

### B. J.C.'s Education at Rowan School of Osteopathic Medicine.

J.C. began his medical education at Rowan in the fall of 2011. (McGruther Cert., Exh. B, Complaint ¶10).[5] During his first year, he took a three-month personal leave of absence. Upon his return, he "successfully remediated his first year of courses." (Id., Complaint ¶11). Three years after he began medical school, in September 2014, J.C. first attempted the COMLEX Level 1. He failed the exam. (Id., Complaint ¶12).

Five months later, in February 2015, after taking a six-week COMLEX review course, J.C. failed the test again. (McGruther Cert., Exh. B, Complaint ¶13). According to RowanSOM policy, upon failing the same test twice, J.C. was put on

---

[5] Rowan does not concede the truth of J.C.'s allegations. It relies on them as presented in the Complaint solely for purposes of this motion to dismiss for failure to state a claim.

academic probation. (Id., Exh. F at 2, Oct. 5, 2015 Letter from E. Zuckerman, Esq.).[6] As a result of his academic probation, J.C. met with the Student Academic Progress Committee. The Committee prohibited J.C. from continuing his clinical rotations until he retook the COMLEX and directed him to take another intensive COMLEX review course that ran from May 18, 2015 to June 28, 2015, "with the expectation that he would retake the COMLEX shortly thereafter." (Id., Complaint ¶14). This timeframe would allow J.C. to complete his medical education within the five year limit.

J.C. requested another leave of absence from medical school through the start of the review course, May 18. Rowan approved his request for nine weeks of medical leave and asked for "a note from [his] treating clinician supporting [his] need to go on a medical LOA as soon as possible." (McGruther Cert., Exh. C, J.C. Sept. 2015 Leave Request, Attachment 2).[7] While he was out on leave, J.C. allegedly requested to enroll in a longer COMLEX review course, one that ran from May 18 to August 23. (Id., Exh. B, Complaint ¶16). The longer review course would

---

[6] This letter requests readmission to Rowan. J.C. relies on his request for readmission in paragraph 39 of the complaint.
[7] Exhibit C is the September 29, 2015 request for a leave of absence and supporting records, which includes communications regarding J.C.'s request for a leave of absence in March 2015. It is referenced in paragraph 31 of the Complaint. Ten of the 12 attachments have been omitted because they are duplicative or unnecessary to this motion.

further delay J.C.'s education, which had been halted by his two prior failures to pass the COMLEX Level 1 and would not resume until he passed the test. J.C. completed the six-week course that concluded on June 28. (Id., Complaint ¶14).

Following his six-week intensive review course, J.C. sat for the COMLEX Level 1 a third time. But he withdrew from the exam prior to completion due to "an unforeseen sudden acute illness." (McGruther Cert., Exh. B, Complaint ¶18; Id., Exh. D,[8] July 14-15, 2015 email exchange). By failing to complete the COMLEX Level 1 exam at that time, J.C. violated the Student Academic Progress Committee's mandate to take the test. (McGruther Cert., Exh. D; Exh. B, Complaint ¶19). This violation was sufficient grounds for the Committee to recommend J.C.'s dismissal from medical school. (Id., Exh. A, Handbook at 82). But the Committee did not recommend dismissal. Instead, the Committee further extended J.C.'s time to take the COMLEX Level 1 and located an available placement for him at the National Board of Osteopathic Medical Examiners' July 30 administration of the test. (Id., Exh. D).

On July 30, J.C. attempted the COMLEX Level 1 a fourth time. (McGruther Cert., Exh. B, Complaint ¶21). But "immediately" following the exam, J.C. contacted the National

---

[8] This email exchange is integral to the Complaint because it includes communications between J.C. and Rowan as described in paragraphs 18-19 of the Complaint.

Board of Osteopathic Medicine and requested that his exam "be voided." (Id.) The reason given was "acute illness." (Id., Exh. C, Attachment 12). The National Board granted his request. (Id.) But because it was the second time J.C. requested that the National Board of Osteopathic Medical Examiners void his COMLEX Level 1 score, if the Board cancelled J.C.'s scores, it would also bar him from taking the test for 60 days from July 30, 2015. (Id.) J.C. consented to those terms. (Id.)

Also following his fourth attempt at the COMLEX Level 1, and despite his request that the National Board void his scores, J.C. resumed his clinical rotations without approval of the Student Academic Performance Committee. (McGruther Cert., Exh. E, Personal Statement at 7 & Attachment 9).[9] The Committee had directed him to discontinue his rotations until he took the COMLEX Level 1, so this continuation violated the Committee's directive. Because he remained on Academic Probation, that violation was sufficient grounds for the Committee to recommend his dismissal from medical school. (Id., Exh. A, Handbook at 82).

Meanwhile, J.C.'s five-year clock to finish the four-year curriculum continued to tick. As a result of J.C.'s delays

---

[9] Exhibit E is the Personal Statement and 86 pages of supporting records J.C. submitted at his dismissal hearing. It is referenced in paragraph 27 of the Complaint. The first six of 11 attachments have been omitted because they are duplicative or unnecessary to this motion.

in taking the COMLEX Level 1, his multiple failures to pass it, and his multiple score cancellations, it became impossible for J.C. to complete his medical school curriculum within five years as required. He was prohibited from continuing his rotations, and so his medical education was halted, until he passed the COMLEX Level 1. Thus Rowan gave J.C. notice that he was required to attend an academic dismissal hearing on September 15, 2015. (Id., Exh. B, Complaint ¶26).

Facing an imminent dismissal hearing, J.C. visited several health care professionals. He compiled letters from them recommending that he be permitted to cancel his July 30 COMLEX Level 1 score and be granted another opportunity to take the COMLEX Level 1. J.C. used these letters as the basis of his request for a third leave of absence from medical school--a leave of absence that would last for the duration of the National Board of Osteopathic Medical Examiners' 60-day ban on his retaking the COMLEX Level 1. (McGruther Cert., Exh. E, Personal Statement at 6). In his submission to the Student Academic Progress Committee in support of his request for another leave of absence, J.C. admits that he did not previously share the extent of his medical condition and treatment with the medical school. (Id., Personal Statement at 7).

J.C. was not granted a leave of absence from medical school. University policy prohibits the use of leave to avoid

academic dismissal. (McGruther Cert., Exh. E, Attachment 10).
And because he had not yet passed the COMLEX Level 1 and could
not immediately resume his rotations, J.C. would be unable to
complete all degree requirements within five years. Thus the
Student Academic Progress Committee recommended his dismissal
from medical school. (McGruther Cert., Exh. B, Complaint ¶28).
J.C. appealed that recommendation. (Id., Complaint ¶29). The
Dean reviewed the Committee's recommendations, considered J.C.'s
appeal, and concurred with the Committee. On September 29, 2015,
the Dean notified J.C. of his formal dismissal from Rowan
University School of Osteopathic Medicine, effective that day.
(Id., Complaint ¶30).

After his dismissal, J.C. continued to request that he
be granted a medical leave of absence. (Id., Complaint ¶31).
Apart from the fact that J.C. had already been dismissed from
medical school, the repeated request was denied because leaves
of absence cannot be used to avoid dismissal for academic or
disciplinary reasons. (Id., Complaint ¶33; Id., Exh. E,
Attachment 10).

Following his dismissal from medical school, on
October 5, 2015, J.C. sent a letter requesting reinstatement.
(McGruther Cert., Exh. F, Oct. 5, 2015 Letter from E. Zuckerman,
Esq.). Nine months later, he sent another letter requesting
reinstatement so that he may apply to the National Board of

Osteopathic Medical Examiners for test accommodations on the COMLEX. (Id., Exh. G, July 7, 2016 letter from M. Goodwin, Esq.).[10]

On April 24, 2017, J.C. filed the complaint, commencing this litigation against Rowan University and Rowan University School of Osteopathic Medicine (collectively, "Rowan"). J.C. seeks reinstatement to medical school, compensatory damages in the amount of tuition he paid, attorneys fees, and declaratory relief. Rowan was served on April 28, 2017. After receiving an extension of time to respond, Rowan now moves to dismiss the complaint for failure to state a claim upon which relief can be granted.

## LEGAL ARGUMENT

The federal pleading standard requires J.C. to show that his claims have facial plausibility. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

---

[10] J.C. relies on his request for readmission in paragraph 39 of the complaint.

cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); see also Iqbal, 556 U.S. at 678-79.

When considering a motion to dismiss for failure to state a claim, under Iqbal and Twombly, a court must take three steps: "First, it must take note of the elements the plaintiff must plead to state a claim." Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (alterations omitted). Next, "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" Id. (quoting Iqbal, 556 U.S. at 675). "Finally, 'when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Id. (alterations omitted) (quoting Iqbal, 556 U.S. at 679). Here, because J.C. fails to plead facts showing he is entitled to relief on any of his claims, his complaint lacks facial plausibility and should be dismissed.

**POINT I**

**J.C. FAILS TO STATE A CLAIM UNDER THE ADA OR REHABILITATION ACT BECAUSE HE DOES NOT SUFFICIENTLY ALLEGE THAT HE REQUESTED AN ACCOMMODATION OR THAT ROWAN DISCRIMINATED AGAINST HIM ON THE BASIS OF A DISABILITY.**

J.C. does not state a claim against Rowan under either the ADA or Section 504 of the Rehabilitation Act. The same

12

standard governs both of these claims. D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 269 (3d Cir. 2014). To state a claim under either, J.C. must allege facts showing that "(1) he has a disability, or was regarded as having a disability; (2) he was 'otherwise qualified' to participate in school activities; and (3) he was 'denied the benefits of the program or was otherwise subject to discrimination because of [his] disability.'" (quoting Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009)). Another essential, although not always express, element of the claim is notice. Shaywitz v. Am. Bd. of Psychiatry & Neurology, 848 F. Supp. 2d 460, 467 (S.D.N.Y. 2012). "[I]n order for a defendant to be liable for discrimination 'on the basis of disability,' 42 U.S.C. § 12182(a), the defendant must have had adequate knowledge of the plaintiff's disability." Id. (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 795 (1st Cir. 1992)). See also Schneider v. Shah, 507 Fed. Appx. 132, 138 (3d Cir. 2012) (including defendant's knowledge of plaintiff's disability as element of failure-to-accommodate claim).

In addition to Rowan's inability to grant accommodations for the COMLEX, J.C.'s allegations fail to show that J.C. requested an accommodation from Rowan or that Rowan was aware of J.C.'s alleged disability.

### A. Rowan Does Not Have Authority to Grant J.C.'s Requested Accommodations for the COMLEX Level 1.

Preliminarily, J.C. has sued the wrong entity. Rowan does not administer the COMLEX and is not authorized to grant test accommodations. See, e.g. Bibber v. Nat'l Bd. of Osteopathic Med. Examiners, Inc., No. 15-4987, 2016 U.S. Dist. LEXIS 48181, at *1 (E.D. Pa. April 11, 2016) (ruling on National Board of Osteopathic Medical Examiner, Inc.'s denial of request for accommodation on COMLEX); Cunningham v. Univ. of New Mexico Bd. of Regents, 531 Fed. Appx. 909, 920 (10th Cir. 2013) ("Insofar as Mr. Cunningham needed an accommodation, it would have been in the area of taking the examinations that *the Board* administered—examinations that are not under the control or purview of UNM."); Ferrell v. Howard Univ., No. 98-1009, 1999 U.S. Dist. LEXIS 20900, at *10 (D.D.C. Dec. 2, 1999) (noting it is "obvious that the [medical board], and not Howard University or its College of Medicine, is the entity which determines who will receive accommodations while taking the [medical licensing examination], and that the [medical board] is the entity which administers the examination and implements the accommodations").

J.C.'s letter seeking reinstatement indicates that "[s]ubsequent to his dismissal from medical school, [J.C.] discussed the necessity of testing accommodations with his clinicians" and requests "50% extended time and off-the-clock

breaks for his standardized exams . . . [including] the COMLEX."
(McGruther Cert., Exh. G, July 7, 2016 letter). The physicians'
letters J.C. enclosed in support of his request for
reinstatement support those accommodations. (<u>Id.</u>, 6/16/16 Siegel
enclosure) (recommending testing accommodations for the COMPLEX
[sic], namely extra off-the-clock breaks and extended test time
of at least 50% extended time); (<u>Id.</u>, 6/10/16 Kurien enclosure)
(recommending "that [J.C.] be permitted to pursue exam
accommodations of 50% extended time with breaks or 100% extended
time from the National Board of Osteopathic Medicine and
complete his medical education at Rowan University").

Even if J.C. has a disability, Rowan does not
administer the COMLEX and cannot grant these requests for
accommodations. Thus his ADA and Section 504 claims against
Rowan must be dismissed.

### B. **J.C. Did Not Request an Accommodation from Rowan.**

To take the COMLEX with or without an accommodation,
J.C. must be enrolled in medical school. (McGruther Cert., Exh.
B, Complaint ¶42). Thus he seeks reinstatement to Rowan so that
he may register for the COMLEX Level 1 and apply to the National
Board of Osteopathic Medical Examiners for test accommodations.
(<u>Id.</u>, Complaint ¶41). As the purported basis for reinstatement,

J.C. now claims that Rowan denied him accommodations prior to his academic dismissal. (Id., Complaint ¶¶25, 32).

J.C. alleges that he requested accommodations from Rowan in the form of a leave of absence and extension of time to take the COMLEX Level 1. (McGruther Cert., Exh. B, Complaint ¶¶25, 27, 29, 31). But he did not make this request until he was facing academic dismissal for failure to complete his coursework within five years (as a result of his failure to pass the COMLEX Level 1 on any of his four attempts). J.C.'s request for a leave of absence was denied because a student may not use a leave to avoid academic or disciplinary dismissal. (Id., Complaint ¶33; Id., Exh. E, Attachment 10 at 83) ("Leaves of Absence cannot be used to avoid dismissal for academic or disciplinary reasons."). Thus this denial was pursuant to University policy and was not based on J.C.'s alleged disability.

Under similar facts, the D.C. Circuit court dismissed a complaint against Howard University with prejudice. Ferrell v. Howard Univ., No. 98-1009, 1999 U.S. Dist. LEXIS 20900, at *5. There, a former medical student brought ADA and Section 504 discrimination claims against the University following her academic dismissal from medical school. The University's policy, like Rowan's, was to dismiss medical students who failed to pass the licensing exam after three tries. The plaintiff-student in that case failed to pass the exam three times, and the

University dismissed her. Subsequent to her dismissal, she was diagnosed with Attention Deficit Hyperactivity Disorder. She advised the University of her diagnosis and requested to be readmitted with appropriate accommodations. The University denied her request, and plaintiff sued. Ferrell, 1999 U.S. Dist. LEXIS 20900, at *2.

The court there noted that the plaintiff was not actually seeking an accommodation from the University. Rather, she sought "a *post hoc* exception to Howard's policy of dismissing students who failed the USMLE three times, . . ." Id. at 16. Such a post hoc exception was not an accommodation for a student enrolled in medical school. "Although it is unfortunate plaintiff's disability was not diagnosed before she took the USMLE, neither the Rehabilitation Act, nor the ADA, requires a university to reconsider a decision to dismiss a student for failure to pass a licensing examination in the number of times allowed by the school because the student is later diagnosed with a disability." Id.

J.C., like the plaintiff-student in Ferrell, was dismissed from medical school for his failure to pass the COMLEX Level 1, which rendered him incapable of completing the curriculum within five years.[11] J.C. was later diagnosed with a

_____

[11] Even if J.C.'s request were proper, it would require an extension of time to complete the degree requirements. "It would

disability and requested a leave of absence to avoid dismissal. As the court held in <u>Ferrell</u>, that is not an accommodation. And it does not require Rowan to reconsider its dismissal decision. Thus Rowan did not deny J.C. an accommodation.

C. **Even if J.C. was Previously Diagnosed with a Disability, Rowan Had No Notice or Knowledge of J.C.'s Alleged Disability or Desire for an Accommodation.**

Rowan had no notice or knowledge of J.C.'s alleged disability prior to its commencement of academic dismissal proceedings. And even then, J.C. requested only a leave of absence from medical school--in violation of Rowan policy.

After failing the COMLEX Level 1 twice, J.C. sought psychological help "to evaluate the reasons for his exam performance issues." (McGruther Cert., Exh. B, Complaint ¶14). He requested a leave of absence to address these issues; it was granted. (<u>Id.</u>, Exh. C, Attachment 2). J.C.'s leave of absence was followed by a period of independent study to prepare for his third attempt at the COMLEX Level 1. (<u>Id.</u>) By agreement with the Student Academic Progress Committee, this period of independent study included attendance at a six-week Kaplan preparation program. (<u>Id.</u>, Exh. B, Complaint ¶14).

---

therefore be unreasonable for [J.C.] to demand that [Rowan] change its requirements regarding the time it takes to graduate or pertaining to successful completion of the nationally recognized Step 1 test." <u>Cunningham</u>, 531 <u>Fed. Appx.</u> at 920.

After his independent study and preparation course, J.C. sat for the COMLEX Level 1 exam on July 14, 2015. He got sick and did not finish the test. (Id., Complaint ¶18). That night, he informed Rowan that he withdrew from the exam prior to completion "due to an unforeseen sudden acute illness." (Id., Exh. D). J.C. did not identify a disability as the reason for his inability to complete the test. Nor did he request an accommodation for the next test administration. J.C. completed the COMLEX Level 1 on July 30, 2015 but then requested that the Board void his results because of "acute illness." (Id., Exh. B, Complaint ¶21; id., Exh. E, Attachment 8).

Only after this fourth attempt at the COMLEX Level 1, when he was facing academic dismissal, did J.C. bring his alleged disability and request for an accommodation to Rowan's attention. In his Personal Statement submitted to the Student Academic Progress Committee at his dismissal hearing, J.C. concedes that he himself was not previously aware that an alleged disability affected his test taking. (McGruther Cert., Exh. E, Personal Statement at 1) ("For reasons then unknown to me, I had severe diarrhea, abdominal cramping, and had to run to the bathroom repeatedly during the exam outside the scheduled break time."); (id., Personal Statement at 3) ("After . . . the 7/30/2015 Level 1 exam, I was referred to see a psychiatrist"). He further informed Rowan that "[i]n the days following July

30th, I made appointments to see my psychiatrist, psychologist and pulmonologist seeking advice on how to aggressively restore my health." (Id., Personal Statement at 1) (emphasis added). And he admits that he did not bring the medical information he obtained in August 2015 to Rowan's attention until "it was absolutely necessary." (Id., Personal Statement at 7). That is, until he faced academic dismissal. (Id., Personal Statement at 7).

J.C.'s psychiatrist also confirms that Rowan could not have known J.C. had a disability that required accommodation. He stated that J.C. "did not know that he needed and could qualify for extended time accommodations on exams such as the COMLEX." (McGruther Cert., Exh. G, 6/10/16 Kurien enclosure).

It was J.C.'s responsibility to request an accommodation prior to his academic dismissal. Shurb v. Univ. of Tex. Health Science Ctr. at Houston-School of Medicine, 63 F. Supp. 3d 700, 708-09 (S.D. Tex. 2014) ("The plaintiff, however, bears the burden of requesting reasonable accommodations."); Schneider, 507 Fed. Appx. at 138 (requiring plaintiff to show that plaintiff requested accommodation or assistance for his or her disability). By his own and his doctor's admission, J.C. was unaware that he required an accommodation prior to his four attempts at the COMLEX Level 1. Accordingly, because J.C. himself did not know, Rowan could not have known that J.C. had a

20

disability or required an accommodation. "After all, 'a defendant can be expected to respond only to what it knows (or is chargeable with knowing.'" Shaywitz, 848 F. Supp. 2d at 467 (quoting Wynne, 976 F.2d at 795). See also Nathanson v. Medical College of Pennsylvania, 926 F.2d 1368, 1381 (3d Cir. 1991) ("In order to be liable under the Rehabilitation Act, [the medical college] must know or be reasonably expected to know of Nathanson's handicap."). And so Rowan did not discriminate-- indeed, could not have discriminated--against J.C. on the basis of a disability, and his ADA and Rehabilitation Act claims should be dismissed.

## POINT II

### J.C.'S NJLAD CLAIM MUST BE DISMISSED BECAUSE HE DID NOT PROVIDE ANY STATEMENT OF THE CLAIM SHOWING THAT HE IS ENTITLED TO RELIEF.

J.C.'s third claim alleges a violation of the NJLAD. (Complaint ¶64). But it does not give Rowan sufficient notice of his claim: including which provision(s) of the NJLAD are at issue or how Rowan allegedly violated the statute. Indeed, J.C. gives no contour to his claim other than "Defendant's conduct is in violation of the N.J.S.A. 10:5-1 et seq., N.J.S.A." This legal conclusion is not entitled to the presumption of truth and fails Rule 12(b)(6)'s requirement of a "short and plain statement of the claim showing that the pleader is entitled to

relief." It does not give Rowan "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). It does not even "'suggest' the required element[s]" of J.C.'s NJLAD claim. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). Because J.C. fails to state a claim upon which relief can be granted under the NJLAD, his third claim must be dismissed.

If J.C. is asserting a disability discrimination claim based on denial of access by a place of public accommodation, this claim fails for the same reason his ADA and Rehabilitation Act claims fail.

And, because his ADA and Rehabilitation Act claims should be dismissed, the court should also decline to exercise supplemental jurisdiction over this state law claim. See Sarpolis v. Tereshko, 625 Fed. Appx. 594, 599 (3d Cir. 2016) ("When exercising this discretion [under 28 U.S.C. § 1367(c)(3)], a district court should not retain supplemental jurisdiction over any remaining state-law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (citations and quotations omitted).

POINT III

**J.C.'S CLAIM FOR DECLARATORY RELIEF MUST BE DISMISSED BECAUSE IT IS A REQUEST FOR A REMEDY, NOT A CAUSE OF ACTION.**

J.C.'s fourth claim is for "Declaratory Relief." This claim rests on alleged violation of the ADA, Section 504, and the NJLAD, as asserted in the first three causes of action. Indeed, J.C. expressly "contends that Defendants violated and continues [sic] to violate his rights under the ADA, Section 504 and NJLAD" and seeks a judicial declaration of the parties' rights and duties. (Complaint ¶¶66-67). This claim is not an independent cause of action. It should be dismissed.

Courts in this Circuit routinely dismiss such standalone claims for declaratory relief because they are requests for remedies, not independent causes of action. See, e.g., Kabbaj v. Google Inc., 592 Fed. Appx. 74, 74 n.2 (3d Cir. 2015) (affirming dismissal of "count" for "Declaratory and Injunctive Relief" because "declaratory and injunctive relief are remedies rather than causes of action"); Neuss v. Rubi Rose, LLC, No. 16-2339 2017 WL 2367056, at *9 (D.N.J. May 31, 2017) (dismissing with prejudice claims for declaratory and injunctive relief because they "are remedies--not independent causes of action"); Lee Dodge, Inc. v. Kia Motors America, Inc., No. 10-5939, 2011 WL 3859914, at *1 n.1 (D.N.J. Aug. 31, 2011) (dismissing "declaratory judgment, specific performance, and

injunctive relief" counts because they "are not substantive claims but rather requests for remedies. . . , and as such, fail to state a claim"). Thus because J.C.'s fourth claim, Declaratory Relief, is a remedy and not a cause of action, it should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed with prejudice.

Respectfully,

CHRISTOPHER S. PORRINO
ATTORNEY GENERAL OF NEW JERSEY


By: s/Jennifer J. McGruther
Jennifer J. McGruther
Deputy Attorney General
Dated: July 17, 2017

24