EXHIBIT 15

# Re: SAPC Decision for 5 yr Extension - APPEAL LETTER

████████████████████

Mon 4/27/2015 11:22 PM

To: Cavalieri, Thomas A <cavalita@rowan.edu>;

Cc: Lambert, Kathryn C <lamberkc@rowan.edu>; Boyd, Linda <boyd@rowan.edu>; Jermyn, Richard <jermynrt@rowan.edu>; Podolin-
Whiting, Deborah P. <podolide@rowan.edu>; Giacobbe, Jacqueline A. <giacobja@rowan.edu>; Cardello, Lisa M
<cardello@rowan.edu>; Wilmes, Regina Rousso <wilmesrr@rowan.edu>; Ford, Ferin <ford@rowan.edu>;

Importance: High

📎 8 attachments

████████ - 5 yr extension denied.pdf; ATT00001.htm; Personal Statement ██████ 4-21-15.pdf; ATT00002.htm; Suporting Document -
Firestone.pdf; ATT00003.htm; Supporting Document - State Police.pdf; ATT00004.htm;

Dear Dean Cavalieri,

I was scheduled to meet with the SAPC committee on April 21 to present my case, requesting permission to take the extended 14-week
board preparation course instead of the previously approved 7-week course.  First, I would like to extend my most sincere apologizes for
being tardy for my 8:15 am meeting with the SAPC. This was the result of inadvertent, unforeseen dangerous travel conditions that
prevented me from driving at the posted speed limit on my way from Jersey City, a commute that is typically less than two hours. While in
route, my vehicle lost traction multiple times. Concerned for my safety, I was forced to drive much slower. This was the result of a tire defect
that I was unaware of.

These issues are clearly demonstrated in the attached documentation, which includes a traffic citation issued at 7:38 am for driving too slow
and obstructing flow of traffic on the NJ Turnpike, and a receipt from Firestone for new tires, which specifically mentions that my vehicle was
not safe to drive and "not highway safe" according to their inspection later that day. Despite such hazards, I still made it to Stratford only 10-
15 minutes late. Unfortunately, I was not permitted to present my case to the committee and a decision was still rendered.

Not only was I prevented from presenting my case personally, I was not able to provide the SAPC members with the attached revised
written statement that contains new information that is vital to their decision, in particular the diagnosis and current treatment for severe
test anxiety as well as a letter from my treating psychologist. The committee did not have this information at the time they rendered a
decision.

Given this information and that the next SAPC meeting is after the start date of the board review course on May 18, I kindly appeal the
decision made at the April 21 SAPC meeting. I have a phone call scheduled with you for Thursday, April 30th at 5:00 pm to discuss this
further and answer any questions you may have. For your convenience, I am sending the material and supporting documentation ahead of
time.

Throughout my time at SOM, you have consistently spoken of the great compassion that our school embodies and instills in all its students,
which for the time being, still includes me. At this time of great need, I am now pleading for your compassion and understanding, both for
the travel conditions that prevented my punctuality and for the opportunity to give this 3rd and final attempt at COMLEX-I my absolute
everything. This 14-week class will allow my psychologist and I to adequately work out my test taking fears and anxiety once and for all.
Only then will I truly know what I am made of and what I have done wrong these last two Level-I attempts. I am merely asking for a chance
to let my pychotherapy work.

Because as a third year student who overcame many obstacles in compeleting all first and second year courses as well as rotations I was
permitted to complete, the possibility of being dismissed is dangerously close. I think I deserve one last chance to triumph over this great

obstacle. It is my greatest hope that you support, encourage and join me in this journey.

Thank you for your time, consideration, and above all else, your great compassion.

Yours very respectfully,

███████████

███████ MPH, CCRP
Medical Student

Rowan University School of Osteopathic Medicine
1 Medical Center Dr, Box 124
Stratford, NJ 08084
Web: ████████████████████████

Dear members of the SAPC committee,

I'm confident that I would benefit from a total immersion structured course to increase my confidence during a comprehensive review of the basic sciences. Also, having a consistent place to go and attend focused lectures would help me maintain my positive spirit and afford me the opportunity to share in this experience with others in a similar situation. I am very excited for this journey.

I'm happy to report that with support of CTL, I was able to locate a Kaplan board review course close to my residence. The other great news is that the folks at Kaplan kindly agreed to wave the $5999 tuition for either the 14 or 7-week course, eliminating the need to borrow additional loans to cover this cost. The schedules are as follows:

- The 7-week course is scheduled for May 18 - June 28 in New York, NY and then I would take COMLEX-1 on July 1st.
- The 14-week course is scheduled for May 18 – August 23 in Newark, NJ and then I would take COMLEX-1 on Sep 2nd.

**After comparing the two courses, I believe I would benefit more from the 14-week course for the following reasons:**

1) After failing COMLEX-1 on two occasions, I am now aware that I suffer from severe testing anxiety and am currently being treated under the care of Dr. Howard Siegel, Ph.D. He also feels that the longer 14-week course would be more beneficial for me and allow adequate time for my treatment to be effective. Please refer to his attached letter.

2) Since this would be my third and final attempt, the pressure is extraordinarily high. The only way to mitigate and confront such life altering pressure is to have the highest level of comprehensive preparation I can possibly attain. The 14-week course offers an additional 40-hours of basic sciences review with built-in structured repetition of key concepts. Given my two unsuccessful attempts at COMLEX-1, I know that I would benefit from a more detailed and in-depth review course.

3) The final schedule for either courses are not yet released, but sample schedules from the similar past courses are attached. As you can see, the lectures of the 14-week course are more spaced out, allowing more time to review and digest the material as well as test my understanding and comprehension with practice questions as the course proceeds. The 7-week course on the other hand provides me with much less time outside the classroom, I worry about the possibility of falling behind and requiring more time for practice questions after the completion of the course and thereby diminishing the benefit obtained from the comprehensive review.

4) Given my current situation, I understand that I will not be entering the residency match with the rest of my class. After taking COMLEX-1 this third time, I will then have 3 semesters of clinical rotations to complete. If I were to enroll in the 7-week course and take Level 1 on July 1st and then immediately resume rotations, this means I would complete all my 3rd and 4th year rotations a full semester before starting residency. The 14-week course however would facilitate a smooth transition into residency without any significant gaps between completing 4th year and residency.

My current schedule only allows for sufficient time to complete the 7-week course while maintaining satisfactory progress towards the 5-year maximum timeframe for the degree requirement. I request authorization from the SAPC committee to extend beyond the 5-year maximum timeframe in order to complete the 14-week course.

Thank you for your time, compassion, understanding and consideration.

Yours very respectfully,

Osteopathic Medical Student
Rowan University School of Osteopathic Medicine

Howard B. Siegel, Ph.D
Clinical Psychologist
7 Kensington Ave
Jersey City, N.J. 07304
201-333-9322

April 23, 2015

To Whom It May Concern:

   I am seeing Mr. ████████ for individual psychotherapy. Mr. ████ started seeing
me on March 20, 2015. We are meeting weekly.

   ██████ has severe test-taking anxiety. Our work is focused on helping reduce his
stress and complete his medical school training. He wanted to take the 14 week Kaplan
course that prepares him for his exam. He prefers the 14 week class over the 7 week class
so he can have more time to study and work with me on reducing his anxiety. It would
seem the longer test preparation would be helpful to ██████

Yours truly,

Howard B. Siegel, Ph.D.

# STEP 1 LivePrep

**Structured • Interaction • Expert Faculty**



MEDICAL

kaplanmedical.com | 1-800-KAP-TEST

| Highlights | Tuition and Fees |
|---|---|
| **Structured.** Classroom structure, and live interaction with peers and faculty.<br>**The best instructors.** We select only our most highly rated faculty – there are no better instructors teaching these disciplines. Period.<br>**Step 1 Lecture Notes.** Full-color illustrations, Clinical Correlates. Mnemonics.<br>**Step 1 Qbank.** Over 3,000 questions. | *7-week Live +*<br>*4-month Qbank :* **$3,699**<br><br>*14-week Live +*<br>*4-monthsQbank:* **$5,999** |

## Audience Profile

• Ideal for students in need of content review with the structure of a classroom setting.

| Features | Benefits |
|---|---|
| • 7-week or 14-week length of access | Dynamic live lectures delivered by expert faculty |
| • Over 240 hours (7-week) or over 280 hours (14-week) of interactive live lectures | Structured and engaging with comprehensive, fresh content review. |
| • Kaplan expert faculty | Kaplan searches the country for faculty who combine phenomenal teaching skills with an intense focus on the test — instructors with years of experience teaching medical students |
| • 4-month access to Step 1 Qbank | Over 3,000 questions including 2,200 Qbank questions, 1 diagnostic test, and 2 full-length simulated exams. |
| • Simulated Exam | Acing Step 1 isn't just about knowing the material. Step 1 is also a test of stamina and time management. We are the ONLY company to provide a FULL-length simulated exam complete with full-length explanations and reKaps. |
| • 150-question diagnostic | Quickly gain insight into your strengths and weaknesses in order to better target your review time. |
| • 9 subject-based assessment tests | Measure your performance on specific disciplines. |
| • Comprehensive Lecture Notes | 7 volumes of updated, full-color Lecture Notes covering the Step 1 basic sciences. |

## Lecture Detail

| Topic | 7-week | 14-week |
|---|---|---|
| Anatomy | 34 hours | 36 hours |
| Behavioral Science | 22 hours | 28 hours |
| Biochemistry & Medical Genetics | 42 hours | 48 hours |
| Immunology | 11 hours | 12 hours |
| Microbiology | 23 hours | 28 hours |
| Pathology | 44 hours | 44 hours |
| Pharmacology | 36 hours | 40 hours |
| Physiology | 42 hours | 42 hours |
| Test-taking Strategies | 3 hours | 3 hours |

Standard Shipping & Handling:
U S.: $20
Expedited (2nd day): $40
Canada and Puerto Rico: $50
All Others: $85

April 21, 2014

# Sample Schedule for 14-Week Course

| Kaplan Medical | | | EANJ13002 | NJST114WAUG13 | Mod: 10/17/13 |
|---|---|---|---|---|---|

**NJ Step 1, 14 Week Prep**
**Kaplan Medical Newark**
**One Gateway Center**
**Newark, NJ**
**August 12, 2013 - November 17, 2013**

| Day | Date | Subject | Lecture | Faculty | 14w Small Group Times |
|---|---|---|---|---|---|
| Monday | 8/12/2013 | Registration<br>Orientation<br>Test Taking Strategies | 7:00am-8 30am<br>8:30am-9 00am<br>9:00am-noon | <br><br>Akunyili, Alice | |
| Tuesday | 8/13/2013 | Behavioral Science | 8:00am-1 00pm | Fadem, Barbara | No Session |
| Wednesday | 8/14/2013 | Behavioral Science | 8:00am-1 00pm | Fadem, Barbara | 2:00pm-4:00pm |
| Thursday | 8/15/2013 | Behavioral Science | 8:00am-1 00pm | Fadem, Barbara | 2:00pm-4:00pm |
| Friday | 8/16/2013 | Behavioral Science | 8:00am-1 00pm | Fadem, Barbara | No Session |
| Saturday | 8/17/2013 | Behavioral Science | 9:00am-1 00pm | Fadem, Barbara | No Session |
| Sunday | 8/18/2013 | Behavioral Science<br>Behavioral Science Assessment Exam (On-line) | 9:00am-1 00pm | Fadem, Barbara | 2:00pm-4:00pm |
| | | | | | |
| Monday | 8/19/2013 | Behavioral Science Assessment Exam Review | 8:00am-10:00am | Fadem, Barbara | |
| Tuesday | 8/20/2013 | Study Break | | | |
| Wednesday | 8/21/2013 | Study Break | | | |
| Thursday | 8/22/2013 | Study Break | | | |
| Friday | 8/23/2013 | Immunology | 8:00am-noon | Jones, Stephen | noon-1:00pm<br>2:00pm-3:00pm |
| Saturday | 8/24/2013 | Immunology | 9:00am-1 00pm | Jones, Stephen | 2:00pm-4:00pm |
| Sunday | 8/25/2013 | Immunology<br>Immunology Assessment Exam (On-line) | 9:00am-1 00pm | Jones, Stephen | 5:00pm-7:00pm |
| | | | | | |
| Monday | 8/26/2013 | Immunology Assessment Exam Review | 8:00am-10:00am | Jones, Stephen | |
| Tuesday | 8/27/2013 | Study Break | | | |
| Wednesday | 8/28/2013 | Biochemistry (Molecular Biology) | 8:00am-noon | Reichenbecher, Vernon | 5:00pm-7:00pm |
| Thursday | 8/29/2013 | Biochemistry (Molecular Biology) | 8:00am-noon | Reichenbecher, Vernon | 5:00pm-7:00pm |
| Friday | 8/30/2013 | Biochemistry (Molecular Biology) | 8:00am-noon | Reichenbecher, Vernon | noon-1:00pm<br>2:00pm-3:00pm |
| Saturday | 8/31/2013 | Biochemistry (Molecular Biology) | 9:00am-1 00pm | Reichenbecher, Vernon | No Session |
| Sunday | 9/1/2013 | Study Break | | | |
| | | | | | |
| Monday | 9/2/2013 | Study Break | | | |
| Tuesday | 9/3/2013 | Study Break | | | |
| Wednesday | 9/4/2013 | Medical Genetics | 8:00am-noon | Reichenbecher  Vernon | 5:00pm-7:00pm |
| Thursday | 9/5/2013 | Medical Genetics<br>Medical Genetics Assessment Exam (On-line) | 8:00am-noon | Reichenbecher, Vernon | 5:00pm-7:00pm |
| Friday | 9/6/2013 | Study Break | | | |
| Saturday | 9/7/2013 | Biochemistry (Metabolism) | 9:00am-2 00pm | Turco, Salvatore | No Session |
| Sunday | 9/8/2013 | Biochemistry (Metabolism) | 9:00am-2 00pm | Turco, Salvatore | 3:00pm-5:00pm |
| | | | | | |
| Monday | 9/9/2013 | Biochemistry (Metabolism) | 8:00am-1 00pm | Turco, Salvatore | 2:00pm-4:00pm |
| Tuesday | 9/10/2013 | Biochemistry (Metabolism) | 8:00am-1 00pm | Turco, Salvatore | 5:00pm-7:00pm |
| Wednesday | 9/11/2013 | Biochemistry (Metabolism)<br>Biochemistry Assessment Exam (On-line) | 8:00am-noon | Turco, Salvatore | 1:00pm-3:00pm |
| Thursday | 9/12/2013 | Medical Genetics Assessment Exam Review<br>Biochemistry Assessment Exam Review | 8:00am-9 00am<br>9:00am-11:00am | Turco, Salvatore<br>Turco, Salvatore | |
| Friday | 9/13/2013 | Study Break | | | |
| Saturday | 9/14/2013 | Study Break | | | |
| Sunday | 9/15/2013 | Study Break | | | |
| | | | | | |
| Monday | 9/16/2013 | Anatomy (Gross/Embryo) | 8:00am-noon | Seiden, David | No Session |
| Tuesday | 9/17/2013 | Anatomy (Gross/Embryo) | 8:00am-noon | Seiden, David | 1:00pm-3:00pm |
| Wednesday | 9/18/2013 | Anatomy (Gross/Embryo) | 8:00am-noon | Seiden, David | No Session |
| Thursday | 9/19/2013 | Anatomy (Gross/Embryo) | 8:00am-noon | Seiden, David | 1:00pm-3:00pm |
| Friday | 9/20/2013 | Study Break | | | |
| Saturday | 9/21/2013 | Anatomy (Neuro/Histo) | 9:00am-2 00pm | Moorman, Stephen | No Session |
| Sunday | 9/22/2013 | Anatomy (Neuro/Histo) | 9:00am-2 00pm | Moorman, Stephen | 3:00pm-5:00pm |
| | | | | | |
| Monday | 9/23/2013 | Anatomy (Neuro/Histo) | 8:00am-1 00pm | Moorman, Stephen | 2:00pm-4:00pm |
| Tuesday | 9/24/2013 | Anatomy (Neuro/Histo)<br>Anatomy Assessment Exam (On-line) | 8:00am-1 00pm | Moorman, Stephen | 2:00pm-4:00pm |
| Wednesday | 9/25/2013 | Anatomy Assessment Exam Review | 8:00am-10:00am | Moorman, Stephen | |
| Thursday | 9/26/2013 | Study Break | | | |
| Friday | 9/27/2013 | Study Break | | | |
| Saturday | 9/28/2013 | Study Break | | | |
| Sunday | 9/29/2013 | Study Break | | | |
| | | | | | |

| Day | Date | Subject | Lecture | Faculty | 14w Small Group Times |
|---|---|---|---|---|---|
| Monday | 9/30/2013 | Physiology (Sections I-VII) | 8:00am-noon | Fischer  Conrad | 1:00pm-3:00pm |
| Tuesday | 10/1/2013 | Study Break | | | |
| Wednesday | 10/2/2013 | Physiology (Sections I-VII) | 2:00pm-7 00pm | Fischer, Conrad | No Session |
| Thursday | 10/3/2013 | Physiology (Sections I-VII) | 8:00am-1 00pm | Fischer, Conrad | 2:00pm-4:00pm |
| Friday | 10/4/2013 | Physiology (Sections I-VII) | 8:00am-noon | Fischer, Conrad | No Session |
| Saturday | 10/5/2013 | Physiology (Sections I-VII) | 9:00am-1 00pm | Fischer, Conrad | 2:00pm-4:00pm |
| Sunday | 10/6/2013 | Study Break | | | |
| | | | | | |
| Monday | 10/7/2013 | Microbiology | 8:00am-1 00pm | Colle, Clarence | No Session |
| Tuesday | 10/8/2013 | Microbiology | 8:00am-1 00pm | Colle, Clarence | 2:00pm-4:00pm |
| Wednesday | 10/9/2013 | Microbiology | 8:00am-1 00pm | Colle, Clarence | No Session |
| Thursday | 10/10/2013 | Microbiology | 8:00am-1 00pm | Colle, Clarence | 2:00pm-4:00pm |
| Friday | 10/11/2013 | Microbiology | 8:00am-noon | Colle, Clarence | No Session |
| Saturday | 10/12/2013 | Microbiology<br>Microbiology Assessment Exam (On-line) | 9:00am-1 00pm | Colle, Clarence | 2:00pm-4:00pm |
| Sunday | 10/13/2012 | Microbiology Assessment Exam Review | 9:00am-11:00am | Colle, Clarence | |
| | | | | | |
| Monday | 10/14/2013 | Study Break | | | |
| Tuesday | 10/15/2013 | Physiology (Sections VIII-XI) | 8:00am-1 00pm | Kudrath, Wazir | No Session |
| Wednesday | 10/16/2013 | Physiology (Sections VIII-XI) | 8:00am-1 00pm | Kudrath, Wazir | 2:00pm-4:00pm |
| Thursday | 10/17/2013 | Physiology (Sections VIII-XI) | 8:00am-1 00pm | Kudrath, Wazir | 2:00pm-4:00pm |
| Friday | 10/18/2013 | Physiology (Sections VIII-XI)<br>Physiology Assessment Exam (On-line) | 8:00am-1 00pm | Kudrath, Wazir | 2:00pm-4:00pm |
| Saturday | 10/19/2013 | Physiology Assessment Exam Review | 9:00am-11:00am | Kudrath, Wazir | |
| Sunday | 10/20/2013 | Study Break | | | |
| | | | | | |
| Monday | 10/21/2013 | Pathology | 8:00am-1 00pm | Cone, Cecil | 2:00pm-4:00pm |
| Tuesday | 10/22/2013 | Pathology | 8:00am-1 00pm | Cone, Cecil | No Session |
| Wednesday | 10/23/2013 | Pathology | 8:00am-1 00pm | Cone, Cecil | 2:00pm-4 00pm |
| Thursday | 10/24/2013 | Pathology | 8:00am-1 00pm | Cone, Cecil | No Session |
| Friday | 10/25/2013 | Pathology | 8:00am-1 00pm | Cone, Cecil | 2:00pm-4:00pm |
| Saturday | 10/26/2013 | Study Break | | | |
| Sunday | 10/27/2013 | Pathology | 9:00am-1 00pm | Cone, Cecil | No Session |
| | | | | | |
| Monday | 10/28/2013 | Pathology | 8:00am-1 00pm | Cone, Cecil | 2:00pm-4:00pm |
| Tuesday | 10/29/2013 | Pathology | 8:00am-1 00pm | Cone, Cecil | 2:00pm-4:00pm |
| Wednesday | 10/30/2013 | Pathology<br>Pathology Assessment Exam (On-line) | 8:00am-1 00pm | Cone, Cecil | 2:00pm-4:00pm |
| Thursday | 10/31/2013 | Pathology Assessment Exam Review | 8:00am-10:00am | Cone, Cecil | |
| Friday | 11/1/2013 | Pathology Review (Live-on-line) | 8:00am-noon | Barone, John | |
| Saturday | 11/2/2013 | Pathology Review (Live-on-line) | 8:00am-noon | Barone, John | |
| Sunday | 11/3/2013 | Pathology Review (Live-on-line) | 8:00am-noon | Barone, John | |
| | | | | | |
| Monday | 11/4/2013 | Pathology Review (Live-on-line) | 8:00am-noon | Barone, John | |
| Tuesday | 11/5/2013 | Study Break | | | |
| Wednesday | 11/6/2013 | Study Break | | | |
| Thursday | 11/7/2013 | Pharmacology | 8:00am-1 00pm | Krishna, Bimal | 2:00pm-4:00pm |
| Friday | 11/8/2013 | Pharmacology | 8:00am-1 00pm | Krishna, Bimal | 2:00pm-4:00pm |
| Saturday | 11/9/2013 | Pharmacology | 9:00am-2 00pm | Krishna, Bimal | No Session |
| Sunday | 11/10/2013 | Pharmacology | 9:00am-2 00pm | Krishna, Bimal | 3:00pm-5:00pm |
| | | | | | |
| Monday | 11/11/2013 | Study Break | | | |
| Tuesday | 11/12/2013 | Pharmacology | 8:00am-1 00pm | Krishna, Bimal | 2:00pm-4:00pm |
| Wednesday | 11/13/2013 | Pharmacology | 8:00am-1 00pm | Krishna, Bimal | No Session |
| Thursday | 11/14/2013 | Pharmacology | 8:00am-1 00pm | Krishna, Bimal | 2:00pm-4 00pm |
| Friday | 11/15/2013 | Pharmacology<br>Pharmacology Assessment Exam (On-line) | 8:00am-1 00pm | Krishna, Bimal | 2:00pm-4 00pm |
| Saturday | 11/16/2013 | Pharmacology Assessment Exam Review | 9:00am-11:00am | Krishna, Bimal | |
| Sunday | 11/17/2013 | Study Break | | | |
| | | | | | |

# Sample Schedule for 7-Week Course

| Kaplan Medical | | | UANJ15001 | OINJ15001 | | NJST1PMAR15 | Mod: 1/21/15 |
|---|---|---|---|---|---|---|---|

**New Jersey Step 1 Prep**
**Kaplan Medical Newark**
**Newark, NJ**
**March 2, 2015 - April 19, 2015**

| Day | Date | Subject | Morning | Faculty | Afternoon | Faculty |
|---|---|---|---|---|---|---|
| Monday | 3/2/2015 | Registration<br>Orientation<br>Immunology | 7:30am-8 30am<br>8:30am-9 00am<br>9:00am-noon | Alley, Tiffany | 1:00pm-5:00pm | Alley, Tiffany |
| Tuesday | 3/3/2015 | Immunology and Q&A<br>Test Taking Strategies<br>Immunology Assessment Exam (On-line) | 8:00am-12:30pm | Alley, Tiffany | 1:30pm-4:30pm | Akunyili, Alice |
| Wednesday | 3/4/2015 | | Study Break | | Study Break | |
| Thursday | 3/5/2015 | | Study Break | | Study Break | |
| Friday | 3/6/2015 | Microbiology | 8:00am-noon | DiCaprio, Kathleen | 1:00pm-5:00pm | DiCaprio, Kathleen |
| Saturday | 3/7/2015 | Microbiology | 9:00am-1 00pm | DiCaprio, Kathleen | 2:00pm-6:00pm | DiCaprio, Kathleen |
| Sunday | 3/8/2015 | Microbiology and Q&A<br>Microbiology Assessment Exam (On-line) | 9:00am-1 00pm | DiCaprio, Kathleen | 2:00pm-5:30pm | DiCaprio, Kathleen |
| | | | | | | |
| Monday | 3/9/2015 | | Study Break | | Study Break | |
| Tuesday | 3/10/2015 | Anatomy | 8:00am-noon | White, James | 1 00pm-4:00pm | White, James |
| Wednesday | 3/11/2015 | Anatomy | 8:00am-noon | White, James | 1 00pm-4:00pm | White, James |
| Thursday | 3/12/2015 | Anatomy | 8:00am-noon | White, James | 1 00pm-4:00pm | White, James |
| Friday | 3/13/2015 | Anatomy | 8:00am-noon | White, James | 1 00pm-4:00pm | White, James |
| Saturday | 3/14/2015 | Anatomy and Q&A<br>Anatomy Assessment Exam (On-line) | 9:00am-1 00pm | White, James | 2 00pm-4:00pm | White, James |
| Sunday | 3/15/2015 | | Study Break | | Study Break | |
| | | | | | | |
| Monday | 3/16/2015 | Biochemistry | 8:00am-noon | Turco, Salvatore | 1 00pm-4:45pm | Turco, Salvatore |
| Tuesday | 3/17/2015 | Biochemistry | 8:00am-noon | Turco, Salvatore | 1 00pm-4:45pm | Turco, Salvatore |
| Wednesday | 3/18/2015 | Medical Genetics and Q&A/Biochemistry<br>Medical Genetics Assessment Exam (On-line) | 8:00am-noon | Turco, Salvatore | 1 00pm-4:45pm | Turco, Salvatore |
| Thursday | 3/19/2015 | Biochemistry | 8:00am-noon | Turco, Salvatore | 1 00pm-4:45pm | Turco, Salvatore |
| Friday | 3/20/2015 | Biochemistry | 8:00am-noon | Turco, Salvatore | 1 00pm-4:30pm | Turco, Salvatore |
| Saturday | 3/21/2015 | Biochemistry and Q&A<br>Biochemistry Assessment Exam (On-line) | 9:00am-1 00pm | Turco, Salvatore | 2 00pm-4:30pm | Turco, Salvatore |
| Sunday | 3/22/2015 | | Study Break | | Study Break | |
| | | | | | | |
| Monday | 3/23/2015 | Physiology | 8:00am-noon | Castro, Manuel | 1 00pm-4:30pm | Castro, Manuel |
| Tuesday | 3/24/2015 | Physiology | 8:00am-noon | Castro, Manuel | 1 00pm-4:30pm | Castro, Manuel |
| Wednesday | 3/25/2015 | Physiology | 8:00am-noon | Castro, Manuel | 1 00pm-4:30pm | Castro, Manuel |
| Thursday | 3/26/2015 | Physiology | 8:00am-noon | Castro, Manuel | 1 00pm-4:30pm | Castro, Manuel |
| Friday | 3/27/2015 | Physiology | 8:00am-noon | Castro, Manuel | 1 00pm-4:00pm | Castro, Manuel |
| Saturday | 3/28/2015 | Physiology and Q&A<br>Physiology Assessment Exam (On-line) | 9:00am-1 00pm | Castro, Manuel | 2 00pm-5:00pm | Castro, Manuel |
| Sunday | 3/29/2015 | | Study Break | | Study Break | |
| | | | | | | |
| Monday | 3/30/2015 | | Study Break | | Study Break | |
| Tuesday | 3/31/2015 | | Study Break | | Study Break | |
| Wednesday | 4/1/2015 | | Study Break | | Study Break | |
| Thursday | 4/2/2015 | Epidemiology/Biostatistics and Q&A/Behavioral Science | 8:00am-noon | Fadem, Barbara | 1 00pm-5:00pm | Fadem, Barbara |
| Friday | 4/3/2015 | Behavioral Science | 8:00am-noon | Fadem, Barbara | 1 00pm-5:00pm | Fadem, Barbara |
| Saturday | 4/4/2015 | Behavioral Science and Q&A<br>Behavioral Science Assessment Exam (On-line) | 9:00am-1 00pm | Fadem, Barbara | 2 00pm-5:30pm | Fadem, Barbara |
| Sunday | 4/5/2015 | | Study Break | | Study Braek | |
| | | | | | | |
| Monday | 4/6/2015 | | Study Break | | Study Break | |
| Tuesday | 4/7/2015 | Pathology | 8:00am-noon | Castro, Manuel | 1 00pm-5:00pm | Castro, Manuel |
| Wednesday | 4/8/2015 | Pathology | 8:00am-noon | Castro, Manuel | 1 00pm-5:00pm | Castro, Manuel |
| Thursday | 4/9/2015 | Pathology | 8:00am-noon | Castro, Manuel | 1 00pm-5:00pm | Castro, Manuel |
| Friday | 4/10/2015 | Pathology | 8:00am-noon | Castro, Manuel | 1 00pm-5:00pm | Castro, Manuel |
| Saturday | 4/11/2015 | Pathology | 9:00am-1 00pm | Castro, Manuel | 2 00pm-6:00pm | Castro, Manuel |
| Sunday | 4/12/2015 | Pathology and Q&A<br>Pathology Assessment Exam (On-line) | 9:00am-1 00pm | Castro, Manuel | 2 00pm-6:00pm | Castro, Manuel |
| | | | | | | |
| Monday | 4/13/2015 | | Study Break | | Study Break | |
| Tuesday | 4/14/2015 | | Study Break | | Study Break | |
| Wednesday | 4/15/2015 | Pharmacology | 8:00am-noon | Brooks, Joshua | 1 00pm-4:30pm | Brooks, Joshua |
| Thursday | 4/16/2015 | Pharmacology | 8:00am-noon | Brooks, Joshua | 1 00pm-4:30pm | Brooks, Joshua |
| Friday | 4/17/2015 | Pharmacology | 8:00am-noon | Brooks, Joshua | 1 00pm-4:30pm | Brooks, Joshua |
| Saturday | 4/18/2015 | Pharmacology | 9:00am-1 00pm | Brooks, Joshua | 2 00pm-5:30pm | Brooks, Joshua |
| Sunday | 4/19/2015 | Pharmacology and Q&A<br>Pharmacology Assessment Exam (On-line) | 9:00am-1 00pm | Brooks, Joshua | 2 00pm-5:00pm | Brooks, Joshua |

| Court ID | Prefix | Ticket Number | NEW JERSEY STATE POLICE |
|---|---|---|---|
| | **SP5** | **531033** | |

**COMPLAINT - SUMMONS  Municipal Court of** _WEST AMPTON_

YOU ARE HEREBY SUMMONED TO APPEAR BEFORE THIS COURT TO
ANSWER THIS COMPLAINT CHARGING YOU WITH THE OFFENSE LISTED:

Driver's Lic. No. ▮▮▮▮▮▮▮▮▮▮▮

| EXP. DATE | STATE | ☐ Commercial License |
|---|---|---|
| | | |

**THE UNDERSIGNED CERTIFIES THAT**

Name ▮▮▮▮▮▮▮▮▮ (Please Print)

Address ▮▮▮▮▮▮▮▮▮

| City | State | Zip Code | Telephone |
|---|---|---|---|
| ▮▮▮ | NJ | | |

| Birth Date | Eyes | Sex | Weight | Height | Restrictions |
|---|---|---|---|---|---|
| ▮▮▮ | | M | | ▮▮▮ | |

**DID UNLAWFULLY (PARK) (OPERATE) A**

| Make Of Vehicle | Year | Body Type | Color | |
|---|---|---|---|---|
| BMW | 02 | | | ☐ Commercial Vehicle ☐ Omnibus |

| Lic. Plate No. | State | Exp. Date | |
|---|---|---|---|
| ▮▮▮▮▮ | NJ | | ☐ Hazardous Material ☐ Out of Service |

V I N ▮▮▮

| Offense Date | Month | Day | Year | Time Hour | AM PM |
|---|---|---|---|---|---|
| | 4 | 21 | 15 | 7:30 | PM |

LOCATION OF OFFENSE _____  Describe Location _850_

| Municipality | County | Mun. Code (Offense) |
|---|---|---|
| AMPTON | | |

**AND DID THEN AND THERE COMMIT THE FOLLOWING OFFENSE**
**(ONE CHARGE PER COMPLAINT)**

**TRAFFIC OFFENSES - (check one) - TITLE 39:**

| | | |
|---|---|---|
| ☐1  3-4   Unregistered vehicle | ☐7  4-85  Improper passing |
| ☐2  3-29  Failure to exhibit documents | ☐8  4-97  Careless driving |
| ☐ D.L. or ☐ REG or ☐ INS | ☐9  4-124 Improper turn |
| ☐3  3-33  Unclear plates | ☐10 4-144 Failure to stop or yield |
| ☐4  3-66  Maintenance of lamps | ☐11 8-1  Failure to inspect |
| ☐5  3-76.2f Failure to wear seatbelt | ☐12 8-4  Failure to make repairs |
| ☐6  4-81  Failure to observe signal | |
| ☐ 4-98 Speeding _____ MPH in a _____ MPH zone | |

**IN EXCESS OF SPEED LIMIT BY:**

☐ 1-9 MPH  ☐ 10-14 MPH  ☐ 15-19 MPH  ☐ 20-24 MPH  ☐ 25-29 MPH  ☐ 30-34 MPH
☐ 65 MPH ZONE   ☐ Safe Corridor   ☐ Construction Zone

**PARKING OFFENSE**

☐ Overtime Meter No. _____  ☐ Prohibited Area  ☐ Double

**OTHER TRAFFIC/PARKING OFFENSE (Describe)**

_OBSTRUCTING FLOW OF TRAFFIC_

| Statute No. | Ordinance / Code No. |
|---|---|
| 39 4 67 | |

☐ Diesel emissions violation Pursuant to N.J.S.A. 39:8-71, you are the agent for the owner, lessee or operator of this diesel vehicle and are being served with this complaint/summons. You must notify the owner, lessee or operator of this complaint/summons so that appropriate action may be taken.

THE UNDERSIGNED FURTHER STATES THAT THERE ARE JUST AND REASONABLE GROUNDS TO BELIEVE THAT YOU COMMITTED THE ABOVE OFFENSE AND WILL FILE THIS COMPLAINT IN THIS COURT CHARGING YOU WITH THAT OFFENSE.

| | Month | Day | Year |
|---|---|---|---|
| | 4 | 21 | 15 |

| Signature of Complaining Witness | Officer's ID. No. |
|---|---|
| | |

**NOTICE TO APPEAR**

| ☐ COURT APPEARANCE REQUIRED | COURT DATE | Month | Day | Year | Time Hour | AM PM |
|---|---|---|---|---|---|---|
| | | | | 15 | | PM |

☐ Accident  ☐ Property Damage  ☐ Personal Injury  ☐ Death/Serious Bodily Injury

| CONDITIONS | | | | | |
|---|---|---|---|---|---|
| AREA | ☐ Business | ☐ School | ☐ Residential | ☐ Rural |
| ROAD | ☐ Dry | ☐ Wet | ☐ Snow | ☐ Ice |
| TRAFFIC | ☐ Light | ☐ Medium | ☐ Heavy | |
| VISIBILITY | ☐ Clear | ☐ Rain | ☐ Snow | ☐ Fog |

| Equipment | ☐ Helicopter | ☐ Pace | ☐ Speed Measurement Device | ☐ EBTD |
|---|---|---|---|---|

| Equipment Operator's Name | Operator ID No. | Unit Code |
|---|---|---|
| | | |

**COMPLAINT - SUMMONS**                                                     UTT-1 (8-05)

**Customer Invoice**
151874
04/23/2015

**FIRESTONE COMPLETE AUTO CARE**
**JERSEY CITY STATE ST**
**70-76 STATE HWY 139**
**JERSEY CITY, NJ. 07306-3527**

Service Advisor:
11 ANDERSON
201.795.4543

2010 BMW 128I BASE
3.0L L6 FI GAS N52B30A

**In:** 04/22/15 4:44PM    **Mileage:** 33,185
**Out:** 04/23/15 12:54PM

510.590.8116 Or 510.590.8116

Store # 022489                                                    **RETAIL SALE**

| Description | Rev Hist /Article # | ID | Qty | Unit Price | Extended Price | Job Total |
|---|---|---|---|---|---|---|
| **BRIDGESTONE TIRES WITH RUN FLAT, PACKAGE** | | 11 | | | | 715.60 |
| 011629 DRIVEGUARD BL 205/50R17 XL93W 50,000 Mile Limited Warranty | 011629 | 05TN | 4 | 151.99 | 607.96 | |
| DOT#  EJH4CJA0414 | | | | | | |
| DOT#  EJH4CJA0414 | | | | | | |
| DOT#  EJH4CJA0414 | | | | | | |
| DOT#  EJH4CJA0414 | | | | | | |
| TIRE-DISC Fast Start $60 off 4 Bridgestone tires | 7089666 | 05TN | -4 | 15.00 | -60.00 | |
| NJ NEW TIRE FEE | 7005473 | 05NN | 4 | 1.50 | 6.00 | |
| 7003012 DRIVEGUARD SUPL ROAD HAZARD LTD WARRANTY | 7003012 | 05TN | 4 | N/C | N/C | |
| NEW TIRE WHEEL BALANCE LABOR | 7013632 | 05TS | 4 | 13.89 | 55.56 | |
| TPMS VALVE SERVICE KIT LABOR | 7008190 | 05TS | 4 | 2.99 | 11.96 | |
| 1092 TPMS KIT | 7012738 | 05TN | 4 | 7.00 | 28.00 | |
| 43MM VALVE LENGTH W/SILVER MARKING INSTALLATION TORQUE (IN LBS) 35 | | | | | | |
| 7097782 ROAD HAZARD PROTECTION | 7097782 | 05TN | 4 | 22.04 | 88.16 | |
| PRT-DISC Regional Promotion | 7097155 | 05TN | -1 | 22.04 | -22.04 | |
| LOW PROFILE TIRE INSTALLATION | 7006472 | 05TS | 4 | N/C | N/C | |
| **LIFETIME ALIGNMENT SERVICE - ONLINE QUOTE** | | 11 | | | | 169.99 |
| No Symptoms | | | | | | |
| LIFETIME ALIGNMENT SERVICE - ONLINE | 7009527 | 05TS | 1 | 169.99 | 169.99 | |
| **COURTESY CHECK** | | 11 | | | | |
| COURTESY CHECK | 7046930 | 05TS | 1 | N/C | N/C | |

**ORDER NOTES**
   PRIOR INSPECTION SUGGESTED DRIVER NOT TO DRIVE VEHICLE. DRIVERS
   FIRST VISIT ON 4/21/2015.DRIVER WAS NOTED THAT VEHICLE IS NOT SAFE TO
   DRIVE UNDER TIRE CONDITIONS. TIRE HAD SLASH AND WAS NOT HOLDING
   AIR. BUBLE FOUND ON TIRE FRONT AS WELL. NOT HIGHWAY SAFE
   DRIVER WAS ADVISE TO DRIVE VEHICLE BACK HOME TILL FURTHER NOTICE
   UPON TIRE ARIVAL FOR INTALLATION.

**Technician(s):**
   05 PATRICK BROOKS

Payment History:

| | | | |
|---|---|---|---|
| CFNA | 9073 | 962.41 | 09019 |
| Total Tendered | | 962.41 | |

All CFNA purchase(s) through December 31, 2015 of $299 or more
receive 6 month deferred interest, see www.CFNA.com for more details.

| Summary: | |
|---|---|
| **Parts** | 642.08 |
| **Labor** | 243.51 |
| **Shop Supplies** | 14.25 |
| **Sub-Total** | 899.84 |
| **Tax (7.00%)** | 62.57 |
| **Total** | $962.41 |

I have received the above goods and/or services. If this is a credit
card purchase, I agree to pay and comply with my cardholder
agreement with the issuer.



www.**FirestoneCompleteAutoCare**.com

STD FCAC LASER  7008335 - 46110392  REV 11/11

See reverse side for Warranty Information



We Support ASE
Testing and
Inv1_150316.405001

**Inspect All Items in Top Section**

Year _9/09_  Make _Bmw_  Model _128 T_

V I N: _(redacted)_

| | SOHC | OHV | | DIESEL | Trans. | Auto |
|---|---|---|---|---|---|---|
| Eng. Size _____ | DOHC | HYBRID | | | Type | Manual |

Hubcap Missing  Y / (N)   Windshield Cracked  Y / N,   Scratches/Dents  Y   N

Lic. # _(redacted)_   State Inspection Due  Month _____  Year _____

## MILEAGE: 5 3 1 4 9

## Maintenance Services / Starting

| Inspect | Visual OK | Visual SUG | Visual REQ | Sched. Maint. | Why Recommended | |
|---|---|---|---|---|---|---|
| Wiper Blades | | | | ▨ | ☐ Front | ☐ Rear |
| Head Lights | | | | ▨ | | |
| Mini Lights | | | | ▨ | ☐ Brake  ☐ Turn Signal  ☐ License Plate  ☐ Parking | |
| Air Filter | | | | ▨ | | |
| Cabin Air Filter | | | | ▨ | | |
| PCV Valve | | | | ▨ | | |
| Washer Fluid | | | | ▨ | | |
| Oil Level | | | | ▨ | | |
| Power Str. Fluid Level | | | | ▨ | | |
| Master Cyl. Fluid Level | | | | | ☐ Brake Inspection | |
| Brake Fluid Flush | | | | | 0  10  30  100  200  300  Copper parts per million | |
| Trans. Service Auto / Manual | | | | | ☐ Flush  ☐ Pan Service | |
| Coolant Level / Flush | | | | ▨ | Type _____ | |
| Coolant Hoses | | | | | ☐ Upper  ☐ Lower  ☐ Bypass  ☐ Heater | |
| Belts  ☐ "V" ☐ Serp | | | | | ☐ ALT  ☐ PS  Belts  ☐ A/C  ☐ AP  1 2 3 4 | |
| Battery ED-18 Test | | | | | ☐ Good  ☐ Marginal  ☐ Replace | |
| Battery Accessories | | | | | ☐ Cable Ends / Cables  ☐ Pos ☐ Neg  ☐ Hold Downs | |
| Battery Gard | | | | ▨ | ☐ Corrosion  ☐ Preventive | |

## Tires and Tire Maintenance

Tire Size:  F _205/50 R17_  R

| | Speed Rating | Run Flat  Y  N |
|---|---|---|
| | | TPMS  Y  N |

| Inspect | Visual OK | Visual SUG | Visual REQ | Tread Depth 32nds Outer | Tread Depth 32nds Inner | ☐ FWD  ☐ RWD  ☐ 4WD/AWD | |
|---|---|---|---|---|---|---|---|
| **Left Front** PSI In: ___ PSI Out: ___ | | | | 6 | 6 | ☐ Edgewear  ☐ Cupping  ☐ Cuts  ☐ Irregularity | ☐ Cracking  ☐ Nails  ☐ Repairable  ☐ Non-Repairable |
| **Right Front** PSI In: ___ PSI Out: ___ | | | | 8 | 8 | ☐ Edgewear  ☐ Cupping  ☐ Cuts  ☐ Irregularity | ☐ Cracking  ☐ Nails  ☐ Repairable  ☐ Non-Repairable |
| **Right Rear** PSI In: ___ PSI Out: ___ | | | | 3 | 2 | ☐ Edgewear  ☐ Cupping  ☐ Cuts  ☐ Irregularity | ☐ Cracking  ☐ Nails  ☐ Repairable  ☐ Non-Repairable |
| **Left Rear** PSI In: ___ PSI Out: ___ | | | | | | ☐ Edgewear  ☐ Cupping  ☐ Cuts  ☐ Irregularity | ☐ Cracking  ☐ Nails  ☐ Repairable  ☐ Non-Repairable |
| **Spare** PSI In: ___ PSI Out: ___ | | | | | | ☐ Edgewear  ☐ Cupping  ☐ Cuts  ☐ Irregularity | ☐ Cracking  ☐ Nails  ☐ Repairable  ☐ Non-Repairable |
| Tire Maintenance | | | | ☐ Rotation | ☐ Balance | | |
| Alignment Check | | | | ☐ Maintenance | ☐ Tire Wear | | |

## Complete Vehicle Inspection
In Addition to The Above Inspect All Items Below

## Maintenance Services / Starting

| Inspect | Visual OK | Visual SUG | Visual REQ | Sched. Maint. | Why Recommended | |
|---|---|---|---|---|---|---|
| Start / Charge Test | | | | ▨ | | |
| Belt Tensioner | | | | ▨ | | |
| Spark Plugs | | | | ▨ | | |
| Fuel Filter | | | | ▨ | | |
| Fuel System Service | | | | ▨ | | |
| Ignition Wires | | | | ▨ | | |
| Valve Cover Gasket | | | | ▨ | | |
| Power Steering Hose | | | | | ☐ Pressure | ☐ Return |
| Timing Belt | | | | ▨ | | |

## Exhaust

| Exhaust System | | | | | ☐ Intermediate Pipe  ☐ Muffler  ☐ Tailpipe | |
|---|---|---|---|---|---|---|

## Steering and Suspension

| U-Joint | | | | | ☐ Front  ☐ Rear | |
|---|---|---|---|---|---|---|
| Idler/Pitman Arm | | | | | ☐ Idler  ☐ Pitman | |
| Center Link | | | | | | |
| Bushings | | | | | ☐ Control Arm  ☐ Sway Bar  ☐ Front ☐ Rear | |
| Link Pins | | | | | ☐ Front ☐ Rear  ☐ Left ☐ Left  ☐ Right ☐ Right | |
| Tie Rod Ends | | | | | ☐ L Out  ☐ L In  ☐ R In  ☐ R Out  ☐ Sleeve(s) | |
| Ball Joints | | | | | ☐ L Upper ☐ L Lower  ☐ R Upper ☐ R Lower  Spec ___ Actual ___ | |
| Rack & Pinion Assembly | | | | | | |
| CV Boots | | | | | ☐ L Out  ☐ L In  ☐ R In  ☐ R Out | |
| CV Joints | | | | | ☐ L Out  ☐ L In  ☐ R In  ☐ R Out | |
| Struts | | | | | ☐ Front ☐ Rear  ☐ Left ☐ Left  ☐ Right ☐ Right | |
| Shocks | | | | | ☐ Front ☐ Rear  ☐ Left ☐ Left  ☐ Right ☐ Right | |

## Brakes        ABS  ■ YES  ☐ NO

| M o e h t i c | Pads greater than 6mm (Disc) or Shoes greater than 2.4mm (Drum) | | | | M o e h t i c |
|---|---|---|---|---|---|
| | Pads greater than 3mm or less than 6mm (Disc) or Shoes greater than 1.6mm or less than 2.4mm (Drum) Document vehicle specific measurements & minimum specifications below | | | | |
| | Pads less than 3mm (Disc) or Shoes less than 1.6mm (Drum) Document vehicle specific measurements & minimum specifications below | | | | |

| LF Pad | LF Rotor / RF Rotor | | | | RF Pad |
|---|---|---|---|---|---|
| | Actual Meas. | | Actual Meas. | | |
| MM Actual | Machine To | | Machine To | | MM Actual |
| | Discard At | | Discard At | | |
| MM Spec. | | | | | MM Spec. |

| LR Pad / Shoe | Drum LR Rotor / Drum RR Rotor | | | | RR Pad / Shoe |
|---|---|---|---|---|---|
| | Actual Meas. | | Actual Meas. | | |
| MM Actual | Machine To | | Machine To | | MM Actual |
| | Discard At | | Discard At | | |
| MM Spec. | | | | | MM Spec. |

| | | | | |
|---|---|---|---|---|
| Rear Clean / Adj | | | | |
| Brake Hose(s) | | | | |
| Parking Cables | | | | |
| Other Brake Services | Hardware | Caliper | Wheel Cylinder | Repack |

Notes: _2 tires, Alignment check tires needed LR & RF_
_Good Year Eagle LS (RA) 89H_
_0 5_

| OK *Checked & acceptable | Repair / Replacement Suggested 1) Close to end of useful life 2) Address customer request / need / convenience 3) Comply with manufacturer recommendation 4) Technician recommendation from experience | Repair / Replacement Required A) No longer performs intended purpose B) Does not meet design specification C) Missing |
|---|---|---|

STEP 5 _____ INSPECTED BY          STEP 7 _____ RE-INSPECTED BY



**FIRESTONE**
**70 STATE HIGHWAY**
**JERSEY CITY NJ 07306**
**PH # 201-795-4543**

Work Order: R000001
VIN:
Date        4/23/15 9:22 AM

WBAUP9C51AVF49395

### BMW 2008-13 E82 17"





EXHIBIT 16

# RE: SAPC Decision for 5 yr Extension - APPEAL LETTER

### Cavalieri, Thomas A

Tue 4/28/2015 6:05 PM

To ███████████████████████

Dar█████

I will be reviewing the information that you sent. I understand that we will be speaking on Thursday. Thank you for sending the attached information in advance.

My best,

Thomas A. Cavalieri, D.O., FACOI, FACP
Dean
Endowed Chair for Primary Care Research
Professor of Medicine

Rowan University-School of Osteopathic Medicine
856-566-6995
856-566-6865 (FAX)
cavalita@rowan.edu

-----------------------------------------------------------------------------

Confidentiality Note:  This message is intended for use only by the individual or entity to which it is addressed and may contain information that is privileged, confidential, and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error,  please contact the sender immediately and destroy the material in its entirety, whether electronic or hard copy.  Thank you.

**From:** ██████████████████████
**Sent:** Monday, April 27, 2015 11:22 PM
**To:** Cavalieri, Thomas A
**Cc:** Lambert, Kathryn C; Boyd, Linda; Jermyn, Richard; Podolin-Whiting, Deborah P.; Giacobbe, Jacqueline A.; Cardello, Lisa M; Wilmes, Regina Rousso; Ford, Ferin
**Subject:** Re: SAPC Decision for 5 yr Extension - APPEAL LETTER
**Importance:** High

Dear Dean Cavalieri,

I was scheduled to meet with the SAPC committee on April 21 to present my case, requesting permission to

EXHIBIT 17

From: **Jermyn, Richard** jermynrt@rowan.edu
Subject: SAPC v o at on
Date: Ju y 15, 2015 at 7:06 PM
To: ███████████████████
Cc: Cava er , Thomas A cava ta@rowan.edu,  Boyd, L nda boyd@rowan.edu,  G acobbe, Jacque ne A. g acobja@rowan.edu,
Lambert, Kathryn C  amberkc@rowan.edu

Your inability to complete the Comlex level 1 exam on 7/14/15 places you in violation of the SAP Committee mandate and Dr.
Cavalieri's requirements.

As a chair of the SAPC, and in consultation with the Dean, we are offering you one last opportunity to take this exam.  We have
confirmed that there is availability in NYC / Long Island in the month of July.

Please make every opportunity to optimize your health with your physicians to ensure your ability to complete the exam on your
next attempt.

Failure to take the exam by July 30 will result in an automatic referral to the SOM Hearing Body for violation of the SAPC
requirements.
Sent from my iPhone

EXHIBIT 18



---

## COMLEX Level I - 7/30 - Acute Illness

---

**Client Services** <ClientServices@nbome.org>                               Tue, Aug 18, 2015 at 2:55 PM
To: ███████████████████████████

Dear ████████

The NBOME received your request to void the July 30, 2015 COMLEX-USA Level 1 administration and the additional materials provided. We understand that test taking is a stressful experience for you. However, this is the second request to void an administration for a non-adverse testing condition. Please refer to the Bulletin of Information, Section V. B., if this is an impairment that may require test accommodations. As a one-time courtesy the NBOME will grant your request to void the July 30, 2015 Level 1 administration. However, due to the fact that this is the second request to void an examination, you may not reschedule to take the examination within 60 days from the date of the examination, July 30, 2015, and may not elect to withdraw from any future examination.

Please confirm and provide your acceptance of this decision by Friday, August 21, 2015 via the clientservices@nbome.org e-mail address.

Sincerely,

Mirela
NBOME
Client Services Representative
866-479-6828
clientservices@nbome.org

The information contained in this email message and its attachments is intended only for the private and confidential use of the recipient(s) named above, unless the sender expressly agrees otherwise.   If the reader of this message is not the intended recipient and/or you have received this email in error, you must take no action based on the information in this email and you are hereby notified that any dissemination, misuse or copying or disclosure of this communication is strictly prohibited.  If you have received this communication in error, please notify us immediately by email and delete the original message.

[Quoted text hidden]

EXHIBIT 19

EXHIBIT 19

# Medical Leave of Absence



Thu 8/20/2015 12:26 AM

To: Lambert, Kathryn C <lamberkc@rowan.edu>;

Dear Dr. Lambert,

I hereby request your approval to go on a medical leave of absence effective 08/20/2015 until 10/01/2015.  I intend to return as an active student on 10/02/2015. I am requesting this time for continuous psychotherapy and effective pharmacotherapy for the medical condition of severe testing anxiety and panic disorder.

Thank you for your time and consideration.

Warmest regards,

███████

███████ MPH, CCRP
Medical Student

Rowan University School of Osteopathic Medicine
1 Medical Center Dr, Box 124
Stratford, NJ 08084
Web: ███████████████████

EXHIBIT 20



**School of Osteopathic Medicine**

## REGULAR MAIL and RowanSOM E-MAIL

August 21, 2015



RE:    Notice of Appearance at **Dismissal Hearing** and Appointment with Dr. Lambert

Student Doctor 

The Student Academic Progress Committee was advised that you have not yet completed the
School requirement to take your COMLEX Level 1 exam, which will extend your academic
program beyond the five-year time limit as stated in the Academic Rules and Regulations,
Sections XIX.E. and XXII:

XIX.    **Dismissal**
In cases where dismissal is being considered, the dismissal will not become final until the school's
internal appeal process, if instituted, has been completed and a final determination has been made
by the Dean. The effective date of dismissal will be the date of final action by the Dean. Pending
the Dean's final decision and in accordance with school-specific policies governing student
dismissals, the student is allowed to continue their participation in all academic activities for
which they are enrolled and will continue to be bound by all school and university regulations and
obligations, including those regarding the assessment and collection of tuition and fees. Reasons
for dismissal may include, but are not limited to, the following:

E.    Failure to complete all required coursework within the maximum time frame specified for
their degree program (not including approved leaves of absence).

XXII.    **Graduation on Alternate Dates**
. . . The maximum time for completion of the academic program is five years, not including any
time on approved leave of absence. . . . A student must complete all degree requirements to
receive the D.O degree.

Therefore, your appearance is required at a **Dismissal Hearing** before the Student Academic
Progress Committee on Tuesday, September 15, 2015, Room 201 of the Academic Center. **You
should arrive in the second floor lobby sitting area of the Academic Center at 8:00 a.m.**

**Academic Affairs**
Academic Center
One Medical Center Drive, Suite 210    856-566-6031
P.O. Box 1011    856-566-6341 fax
Stratford, NJ 08084    rowan.edu/som

Students may be accompanied by a faculty advocate when the Committee is considering a recommendation for dismissal. A student who is required to appear before the Student Academic Progress Committee also has the option to request support through the process from one of the Student Representatives to the Committee. That student Committee member will attend the meeting with the student and will attend the closed discussion by the Committee. The Student Representative will not be present for the Committee vote.

**You are also required to schedule an appointment with Kathryn C. Lambert, D.O., FAOASM, Assistant Dean for Student Affairs, _prior to your appearance_ by calling 856-566-6788.**

Upon receipt of this notice, contact Joann Garwood 856-566-6972 or garwoojj@rowan.edu to confirm your attendance at the Dismissal Hearing, and advise Ms. Garwood in advance if you plan to have an advocate accompany you to the meeting. If you have not already done so, you are also required to contact Ms. Lisa Cardello in the Center for Teaching and Learning for additional educational support (856-566-6196) within the next ten (10) working days.

Sincerely,

Richard Jermyn, D.O.
Chair, Student Academic Progress Committee

RJ:jjg

cc:     Thomas A. Cavalieri, D.O., FACOI, FACP, Dean
        Jackie Giacobbe
        Lisa Cardello
        Regina Wilmes
        Linda Boyd, D.O.
        Kathryn C. Lambert, D.O., FAOASM

EXHIBIT 21

From: **Wilmes, Regina Rousso**  w  mesrr@rowan.edu
Subject: Rema n ng t me frame
Date: August 24, 2015 at 9:46 AM
To: ███████████████████



Per your request, I am letting you know that you have three more semesters left (this fall is one of them).  If you return on Monday, August 31ˢᵗ and take <u>no</u> breaks at all (meaning no flex time this year <u>or</u> next fall), then you could complete all your remaining clerkship requirements by the end of 5 years. The final date of next fall semester is December 6ᵗʰ (a Sunday).

You asked me if I had accounted for the past 3 weeks of rotations that you have been on during August 2015 after you took the exam on July 30ᵗʰ.  Since you were expected to stay off  rotations until you had taken COMLEX 1, I explained that I had not. Since you already knew you had asked for your score be negated, the July 30ᵗʰ exam would not fulfill the requirement of "taking" Level 1.  Therefore, you should not have begun rotating.  When you tried to explain your logic as to why those 3 weeks of rotation should count, I said you would have to discuss that with the SAP Committee.

Sincerely,

Regina Wilmes, Associate Registrar
Rowan University School of Osteopathic Medicine
1 Medical Center Drive, Suite 210
PO Box 1011
Stratford, NJ 08084
856-566-7055
Fax 856-566-6475
wilmesrr@rowan.edu

CONFIDENTIALITY NOTICE:  This email communication may contain private, confidential, or legally privileged information intended for the sole use of the designated and/or duly authorized recipient(s).  If you are not the intended recipient or have received this e-mail in error, please notify the sender immediately by e-mail and permanently delete all copies of this e-mail including all attachments without reading them.  If you are the intended recipient, secure the contents in a manner that conforms to all applicable State and/or Federal requirements related to privacy and confidentiality of such information.

EXHIBIT 22

# SAPC Approval for Medical Leave of Absence - 08/20/2015 until 10/01/2015

█████████████████████

Mon 8/24/2015 6:49 PM

To: Jermyn, Richard <jermynrt@rowan.edu>;

Cc: Cavalieri, Thomas A <cavalita@rowan.edu>; Lambert, Kathryn C <lamberkc@rowan.edu>; Boyd, Linda <boyd@rowan.edu>; Podolin-Whiting, Deborah P. <podolide@rowan.edu>;

Importance: High

📎 4 attachments

Attachment-1.pdf; ATT00001.htm; Attachment-2.pdf; ATT00002.htm;

Dear Dr. Jermyn,

I contacted Dr. Lambert to request a medical leave absence on 8/20/2015, and she informed me that in my circumstance the request for leave of absence has to be approved by the student academic progress committee (SAPC). I hereby writing to you to request SAPC's approval to go on a medical leave of absence effective 08/20/2015 until 10/01/2015.  I intend to return as an active student on 10/02/2015. I am requesting this leave of absence to optimize my health in order to successfully retake the COMLEX Level I examination and address the following issues:

-To aggressively treat the mental illness that impaired my ability to complete the COMLEX Level I exam on 7/30/2015 via continuous psychotherapy and pharmacotherapy. My treating psychiatrist recommended a grace period before the pharmacotherapy becomes effective.

- To complete the reassessment work up for obstructive sleep apnea including monitoring the response to the newly prescribed nocturnal treatment regimen as well as ENT & allergy consult to address the factors that adversely affected my successful treatment recently.

Supporting medical documents are attached to this email. Please let me know

Howard B. Siegel, Ph.D.
Clinical Psychologist
7 Kensington Avenue
Jersey City, N.J. 07304
201-333-9322

August 12, 2015

To Whom It may Concern:

██████████ had been in psychotherapy with me since March 20, 2015.
█████████ started treatment with me because of extreme test anxiety and panic disorder.
We discussed deep breathing techniques along with various exercises to train him to get
into something concrete happening at the time of his panic feelings.

██████ also started taking a Kaplan preparation course for his exam. He was quite
disciplined in his approach to studying the material. I was very impressed with the
amount of dedicated time he gave to his studies. He felt very good about his
understanding of the material. He was prepared to take the test. At he exam he almost
immediately developed an intestinal disorder and left the exam. He was allowed
to take the exam the next time it was given. This time in addition to the gastro-intestinal
disorder he also had a full blown panic attack and tried unsuccessfully to try what I taught
him to do.

   It seems that he was very aware that this was his last chance and that set off the panic
disorder. It was a do or die feeling that made him anxious. I suggest that you allow him to
take the exam with the explicit understanding that he could take it over again if he needed
to. My feeling is that openness would allow his anxiety to dissipate and he would do well
on the exam.

Sincerely,

Howard B. Siegel, Ph.D.

**Palisade Behavioral Care**
**221 Palisade Avenue**
**Jersey City, NJ 07306**
**Phone (201) 656-3116**
**Fax (201) 656-9044**

August 4, 2015

██████████████

To Whom It May Concern:

████████████ is a patient in my office and is being treated for severe testing anxiety and panic disorder. He reported twenty sessions of psychotherapy to reduce testing anxiety in preparation for his COMLEX exam. He still experienced severe anxiety and symptoms consistent with panic attack while taking his COMLEX USA Level-1 exam on July 30, 2015. I prescribed him Paroxetine 12.5mg daily starting on 08/03/2015 and Propanol 20mg to be taken 1-hr before the exam.

I recommend that you allow him to void this COMLEX USA Level-1 examination taken on July 30, 2015 and grant him permission to retake his exam once the course of the medical therapy has become effective, which I anticipate will take a minimum of four weeks.

If you have any further questions regarding ███████ please contact my office after obtaining written permission from him per HIPAA.

Sincerely,

Abby Kurien, M.D.
AK/mp



Tanuj Bhatnagar MD

550 Newark Ave                          (201) 636-5050
2nd Floor
Jersey City, NJ 07306                   (201) 763-6938

August 3, 2015

To Whom It May Concern:

█████████████ is a patient of mine and is being re-assessed for
obstructive sleep apnea. His sleep disturbance is affecting his ability to study
for his exams. Work up and treatment should be addressed in next 6 to 8
weeks. Please allow him to postpone his COMLEX exam while I work with
him to addresses his sleep issues.
If you have any question I could be reached at 201-636-5050.

Thank you.

Sincerely,

Tanuj Bhatnagar MD

EXHIBIT 23



**School of Osteopathic Medicine**

## REGULAR MAIL and RowanSOM EMAIL

September 21, 2015

RE:    Recommendation of the Student Academic Progress Committee

Student Doctor 

The Student Academic Progress Committee discussed your academic progress subsequent to your appearance at a **Dismissal Hearing** on September 15, 2015. Following their discussion, the Committee voted to recommend your dismissal from RowanSOM to the Dean based on the fact that you have not completed your degree requirements, specifically COMLEX Level 1, within the five-year rule.

The dismissal policy in the Education Handbook, Academic Rules and Regulations, Section XIX., states:

XIX.    **Dismissal**

In cases where dismissal is being considered, the dismissal will not become final until the school's internal appeal process, if instituted, has been completed and a final determination has been made by the Dean. The effective date of dismissal will be the date of final action by the Dean. Pending the Dean's final decision and in accordance with school-specific policies governing student dismissals, the student is allowed to continue their participation in all academic activities for which they are enrolled and will continue to be bound by all school and university regulations and obligations, including those regarding the assessment and collection of tuition and fees. Reasons for dismissal may include, but are not limited to, the following:

A.    Failure in three or more courses in an academic year.

B.    Failure of the same course two times.

C.    Failure of four courses in the first two years.

D.    Failure of the same COMLEX exam three times.

E.    **Failure to complete all required coursework within the maximum time frame specified for their degree program (not including approved leaves of absence).**

F.    Absence of the personal qualifications and attributes deemed necessary to perform the duties of an osteopathic medical student and the osteopathic medical profession.

**Academic Affairs**

Academic Center
One Medical Center Drive, Suite 210           856-566-6031
P.O. Box 1011                                 856-566-6341 fax
Stratford, NJ 08084                           rowan.edu/som

XXII.   **Graduation on Alternate Dates**
The Doctor of Osteopathic Medicine (D.O.) degree is usually awarded in May after completion of the fourth-year curriculum. A student who will complete all of his/her degree requirements after the month of May can be awarded the D.O. degree at a later time subsequent to completion of all degree requirements. **The maximum time for completion of the academic program is five years, not including any time on approved leave of absence.** To be awarded the D.O. degree, students must have the approval of all of the following: the SOM Student Academic Progress Committee, the SOM Executive Council, and the SOM Faculty. A student must complete all degree requirements to receive the D.O degree. Students will be permitted to participate in the Convocation and Commencement ceremonies in May if it is anticipated that they will complete their degree requirements by August 31st. . . .

XII.   **Student Academic Progress Committee (SAPC)**
The Student Academic Progress Committee, composed of faculty and elected student members, is responsible for formulating recommendations to the Dean regarding grades, absences, promotions, graduation, and dismissal. The School of Osteopathic Medicine reserves the right to require the withdrawal of any student at any time the School deems necessary to safeguard its ideals of scholarship and character and to secure compliance with its regulations. The records of each student are reviewed periodically by the Student Academic Progress Committee. The Dean of the School acts upon the recommendations received from the Student Academic Progress Committee and may:
- promote students whose work is satisfactory;
- warn students whose work is less than satisfactory that they must improve their scholastic performance;
- direct that students whose work is unsatisfactory be placed on probation with an opportunity to repeat specified courses;
- approve the dismissal of a student who is considered an unpromising candidate for the degree of Doctor of Osteopathic Medicine.

The Dean, with the advice of the Student Academic Progress Committee, may require the withdrawal of a student at any time if, in the opinion of the majority of the members of the Committee, the student should not continue in the School.

**A student may appeal any recommendation of the Student Academic Progress Committee to the Dean of the School within two weeks of notification.**

Please note that the Committee makes recommendations regarding dismissals to the Dean, whose decision is final. You should make an appointment to meet with the Dean by contacting his office (856-566-6996) if you choose to appeal this decision.

Sincerely,

Richard Jermyn, D.O.
Chair, Student Academic Progress Committee
RJ:jjg
cc:     Thomas A. Cavalieri, FACOI, FACP
        Linda Boyd, D.O.
        Kathryn C. Lambert, D.O.
        Jackie Giacobbe
        Regina Wilmes

EXHIBIT 24



# EDUCATION HANDBOOK

## Go To Table of Contents

**Acknowledgements**

Preparation of this Education Handbook was made possible through the cooperation of the staff of the Dean's Office, the offices of Academic Affairs, Registrar, Admissions, Alumni and Student Affairs, Graduate Medical Education and Academic Technology.

*When modifications to the Education Handbook occur, students will be notified by e-mail. It is the student's responsibility to check their RowanSOM e-mail on a daily basis and keep abreast of all changes.*

**The Education Handbook is informational only and does not constitute a contract between Rowan University School of Osteopathic Medicine and any student. It may be changed by RowanSOM without prior notice to students. Any rules, regulations, policies, procedures or other representations made herein may be interpreted and applied by RowanSOM to promote fairness and academic excellence, based on the circumstances of each individual situation.**

**Academic Center**
**One Medical Center Drive**
**Stratford, New Jersey 08084-1501**
**(856) 566-6000 • www.rowan.edu/som/education**

**Revised NOVEMBER 2014**

# Table of Contents

Table of Contents ....................................................................................................... 2

ACADEMIC AFFAIRS .............................................................................................. 7

ABOUT YOUR MEDICAL EDUCATION AT ROWANSOM .................................... 8
CAREER COUNSELING ....................................................................................... 9
COMPREHENSIVE OSTEOPATHIC MEDICAL LICENSING EXAMINATION (COMLEX–USA) ........... 9
COMPUTER LAPTOP PROGRAM ......................................................................... 9
COURSE REMEDIATION ...................................................................................... 10
CURRICULAR OPTIONS ....................................................................................... 10
CURRICULUM SUMMARY .................................................................................... 13
DESCRIPTION OF THE CURRICULUM .................................................................. 15
DUAL DEGREE PROGRAMS ................................................................................. 18
FIRST-YEAR PROGRAM ....................................................................................... 21
FIRST-YEAR STANDARD CLASS SCHEDULE SAMPLE .......................................... 22
FIRST-YEAR EXAM WEEK SCHEDULE SAMPLE .................................................. 23
FIRST-YEAR COURSE DESCRIPTIONS .................................................................. 24
SECOND-YEAR PROGRAM ................................................................................... 29
SECOND-YEAR STANDARD WEEK SCHEDULE SAMPLE ...................................... 30
SECOND-YEAR EXAM WEEK SCHEDULE SAMPLE .............................................. 31
SECOND-YEAR COURSE DESCRIPTIONS .............................................................. 32
THIRD-AND FOURTH-YEAR POLICIES ................................................................. 38
THIRD AND FOURTH YEARS (CLINICAL YEARS) - STUDENT RESPONSIBILITIES ......... 42
      Announcements and Notices ........................................................................ 42
      Attendance ................................................................................................. 42
      Challenge of Clinical Evaluation ................................................................ 42
      Charting Responsibilities ............................................................................ 42
      Clinical Program Evaluation ....................................................................... 43
      Daily Routine ............................................................................................. 43
      Daily Time Requirements and Notices ........................................................ 43
      Evaluation and Grading Clinical Years ....................................................... 43
      Evaluation Process ..................................................................................... 44
      General Duties ........................................................................................... 44
      History and Physical Examinations (H&P's) ............................................... 45
      On-call Responsibilities .............................................................................. 45
      Standards of Dress and Behavior ............................................................... 46
THIRD- AND FOURTH-YEAR REQUIRED ROTATIONS ......................................... 47
THIRD-YEAR PROGRAM ...................................................................................... 48
      Clinical Instruction ..................................................................................... 48
      Hospital Contacts ....................................................................................... 48
      Instructional Goals ..................................................................................... 49
      Other Helpful Contacts ............................................................................... 49
      Reporting Information ................................................................................. 49

Third-Year Course Descriptions .................................................................... 50
Fourth-Year Program ...................................................................................... 55
Fourth-Year Course Descriptions ................................................................. 56
   Independent Study ........................................................................................ 61
   Medical Student Performance Evaluation (MSPE) ...................................... 61
   Other Curricular Requirements .................................................................... 61
Fourth-Year Clerkship Directors .................................................................. 62
Fourth-Year Rotation Contacts ..................................................................... 62

ACADEMIC TECHNOLOGY ........................................................................ 64

ACADEMIC RULES AND REGULATIONS .................................................. 67
   I.      Purpose ............................................................................................. 67
   II.     Student Registration ........................................................................ 67
   III.    Attendance ........................................................................................ 68
   IV.    Grading ............................................................................................. 70
   V.     Remediation ..................................................................................... 73
   VI.    Auditing Courses ............................................................................. 73
   VII.   Pre-clinical Years 1 and 2 ............................................................... 73
   VIII.  Clinical Years 3 and 4 ..................................................................... 74
   IX.    Missed Exam. ................................................................................... 75
   X.     SOM Exam Administration and Proctoring ................................... 77
   XI.    COMLEX Policy and Procedures ................................................... 79
   XII.   Student Academic Progress Committee (SAPC) ........................... 80
   XIII.  Review by the Student Academic Progress Committee .................. 81
   XIV.  Academic Warning .......................................................................... 81
   XV.   Academic Probation ......................................................................... 82
   XVI.  Leave of Absence ............................................................................. 82
   XVII. Student Scholar ............................................................................... 84
   XVIII. Withdrawal ..................................................................................... 84
   XIX.  Dismissal .......................................................................................... 85
   XX.   Graduation Requirements ................................................................ 85
   XXI.  Additional Required Clinical Experiences ..................................... 86
   XXII. Graduation on Alternate Dates ....................................................... 86
   XXIII. Awarding a D.O. Degree Posthumously ........................................ 86
   XXIV. Standards of Satisfactory Academic Progress for Title IV and NJ Financial
             Aid Program Eligibility ................................................................. 87

ACCREDITATION OF ROWAN UNIVERSITY ........................................... 93

ACCREDITATION OF RowanSOM ............................................................. 93

ADMINISTRATION OF ROWAN UNIVERSITY ......................................... 93

ADMINISTRATION OF RowanSOM ............................................................ 93

ACADEMIC CALENDARS 2014-2015 ......................................................... 95

ADMISSIONS ................................................................................................ 97
   Academic Requirements ................................................................................ 97

ACCEPTED STUDENTS DAY ................................................................................. 98
APPLICATION PROCEDURES ................................................................................ 99
AACOMAS ...................................................................................................... 99
BACKGROUND CHECK (CBC) ............................................................................ 99
COMMITMENT TO UNDERREPRESENTED MINORITY AND ECONOMICALLY DISADVANTAGED
    STUDENTS ................................................................................................... 101
ESSENTIAL FUNCTIONS FOR ADMISSIONS, MATRICULATION, PROMOTION AND GRADUATION 102
HOUSING ........................................................................................................ 104
IMMUNIZATION AND HEALTH REQUIREMENTS .................................................... 104
POLICY ON TUITION AND FEES .......................................................................... 106
PREREQUISITES ............................................................................................... 106
STUDENT BODY ............................................................................................... 107
TRANSFER PROCEDURE .................................................................................... 107
TRANSFER CREDIT FOR ADVANCE STANDING IN SCIENCE COURSES ...................... 107
TRANSFER CREDIT FOR TRANSFER STUDENTS .................................................... 108
TUITION AND FEES ........................................................................................... 108
    Applicant Fees ........................................................................................... 108
    Tuition for 2014-2015 (per academic year): .............................................. 108

ASSESSMENT AND EVALUATION ............................................................... 110

BOARD OF TRUSTEES ROWAN UNIVERSITY ........................................... 112

CAMPUS INFORMATION ............................................................................... 112

CENTER FOR TEACHING AND LEARNING (CTL) .................................... 114

CLINICAL EDUCATION & ASSESSMENT CENTER (CEAC) ..................... 115

CODE OF ETHICS OF THE AMERICAN OSTEOPATHIC ASSOCIATION ....... 116

CONTINUING MEDICAL EDUCATION ...................................................... 119

FACULTY OF RowanSOM .............................................................................. 120

FINANCIAL AID for RowanSOM STUDENTS ............................................. 129
    THE BURSAR'S OFFICE/BUSINESS OFFICE/ CASHIER .................................... 129
    FINANCIAL AID ............................................................................................ 129
    SOURCES OF FINANCIAL AID ........................................................................ 130

GRADUATE MEDICAL EDUCATION ........................................................... 133

HISTORY OF ROWAN UNIVERSITY ............................................................ 134

HISTORY OF ROWAN UNIVERSITY SCHOOL OF OSTEOPATHIC MEDICINE ........... 134

HONOR CODE OF PROFESSIONAL CONDUCT ........................................ 135

INFORMATION RESOURCES AND TECHNOLOGY (IRT) ......................... 139
    ACCEPTABLE USE POLICY .............................................................................. 139
    COMPUTING ACCOUNTS AND PASSWORD MANAGEMENT ............................... 139
    COMPUTER LABS FOR STUDENTS ................................................................... 139
    COMPUTER LAPTOP PROGRAM ...................................................................... 140
    GENERAL INFORMATION ............................................................................... 141

4

Glossary ............................................................................................................... 141
Printing Support ................................................................................................... 142
Wireless Coverage ............................................................................................... 142

LIBRARY ................................................................................................................... 143

MISSION OF ROWAN UNIVERSITY ........................................................................ 146

MISSION, VISION, ESSENTIAL VALUES and GUIDING PRINCIPLES OF RowanSOM . 146

OSTEOPATHIC MEDICINE ....................................................................................... 148

OSTEOPATHIC OATH ............................................................................................... 149

POLICIES ................................................................................................................... 150
AA / EEO Policy and to File a Complaint ............................................................. 150
Acceptable Use Policy ......................................................................................... 150
Alcohol and Other Drugs Policy .......................................................................... 150
Americans with Disabilities Act Accommodations ............................................... 150
Clean Air / Smoke-Free Environment ................................................................... 150
COCA Complaints - Policies and Procedures Regarding Complaints Related to
        COCA Accreditation Standards ................................................................... 151
Criminal Background Check .................................................................................. 152
Diversity ............................................................................................................... 154
Drug-Free Environment ........................................................................................ 154
Equal Opportunity ................................................................................................. 154
Family Educational Rights and Privacy Act (FERPA)............................................ 155
Inability to Perform Essential Functions ............................................................... 155
Involuntary Leave of Absence and Involuntary Withdrawal ................................. 156
Military Leave from Academic Programs ............................................................... 156
Misconduct in Science .......................................................................................... 157
Patents ................................................................................................................. 157
Research Ombudspersons..................................................................................... 157
Sexual Misconduct and Harassment Policy ......................................................... 157
Student Intervention Coordinator .......................................................................... 176
Student Rights, Responsibilities and Disciplinary Procedures............................. 177
Students with Impairments.................................................................................... 187
Students Participating in Educational Activities Outside RowanSOM or Any of its
        Affiliates ...................................................................................................... 188
Workplace Diversity .............................................................................................. 192

REGISTRAR ............................................................................................................... 193
Address Changes .................................................................................................. 193
Academic Attire ..................................................................................................... 193
Annual Notification of Rights Under FERPA.......................................................... 193
Course Rosters ..................................................................................................... 195
Diplomas ............................................................................................................... 195
Grade Legend ....................................................................................................... 195
Grade Rosters ....................................................................................................... 196
Name Changes ...................................................................................................... 196

REGISTRATION ............................................................................................................ 196
TRANSCRIPTS ............................................................................................................. 196
VERIFICATIONS ........................................................................................................... 197

ROWAN SCHOOL OF OSTEOPATHIC MEDICINE OSTEOPATHIC POSTDOCTORAL
TRAINING INSTITUTION OF NEW JERSEY (Rowan SOM OPTI of NJ) ........................... 198

STUDENT AFFAIRS ...................................................................................................... 199
ALUMNI ASSOCIATION/ ALUMNI FACTS ............................................................. 199
ORIENTATION ............................................................................................................. 199
ROOM RESERVATIONS MUST BE MADE 72 HOURS IN ADVANCE. ................................. 200
ROWANSOM COMMENCEMENT ................................................................................. 200
SCHOOL CLOSING ...................................................................................................... 200
STUDENT HEALTH SERVICES .................................................................................... 201
STUDENT MENTAL HEALTH ....................................................................................... 202
STUDENT WELLNESS PROGRAM (SWP) .................................................................... 202
UNIVERSITY COMMENCEMENT .................................................................................. 203
WHITE COAT CEREMONY .......................................................................................... 203

STUDENT GOVERNMENT ASSOCIATION (STUCO) CONSTITUTION ........................... 204

STUDENT PROFESSIONAL SOCIETIES & CLUBS OF SOM ........................................... 204

TELEPHONE NUMBERS ............................................................................................... 210

INDEX ........................................................................................................................ 212

comply with all requirements of Academic Warning will receive a private letter of admonishment or other disciplinary action at the discretion of the Committee.

If a student's academic performance improves and their average rises above 70 for the course(s) in question and for two consecutive exams, they can request a review of their current academic record to have the status removed through CTL.

## XV.   Academic Probation

The Committee has wide discretion on placing a student on Academic Probation, including limiting a student's choice of clerkship hub.  In general, a student who fails two courses in their academic career, or any two COMLEX examinations, will be placed on Academic Probation for a period of at least one calendar year.  In the case of failed COMLEX examinations, the student will be on Academic Probation at least until the student has passed the examination.  Academic Probation requires:

1.     Possible ongoing appearances before the Committee according to a schedule set out by the Committee members.

2.     Student compliance with all recommendations of the Committee.

3.     Prohibition against student holding any office in student government, clubs, etc.

4.     Prohibition against student serving on any committees.

5.     Prohibition against student travel to conventions, conferences, meetings, recruiting trips or other travel that will require time away from the classroom.

6.     Participation in an individualized remediation program designed with the Center for Teaching and Learning.  The Committee may make other academic requirements.  Students on Academic Probation who fail to meet all requirements of Academic Probation may be recommended for dismissal.

## XVI.  Leave of Absence

A.     Administrative Leave of Absence

1.     A student may be placed on administrative leave of absence for academic or personal circumstances following review by the Committee.

2.     A student may be placed on administrative leave of absence any other time by the Assistant Dean for Student Affairs on the basis of academic or personal circumstances.  The circumstances and the conditions of the

leave will be provided in writing to the student and the Committee by the Assistant Dean for Student Affairs.

B.    Medical or Personal Leave of Absence

    1.    A leave of absence may be granted by the Committee upon recommendation of the Assistant Dean for Student Affairs for a student having personal or medical problems that are unlikely to be resolved while the student is in full-time attendance.

    2.    Any student requesting a leave of absence for personal or medical reasons shall consult with the Assistant Dean for Student Affairs before submitting a written request.

    3.    Written requests for leave of absence for personal or medical reasons for students in good academic standing may be acted on by the Assistant Dean for Student Affairs. Leaves of Absence cannot be used to avoid dismissal for academic or disciplinary reasons. Written requests for medical leave of absence must be accompanied by verification from the student's healthcare provider. However, it is within the discretion of the Assistant Dean for Student Affairs to grant a request for a personal or medical leave of absence for emergent circumstances.

C.    Maximum Leave of Absence
Maximum cumulative leaves of absence are two years, unless the student is participating in an approved dual degree program, or for other reasons as specified by the Committee. A student is normally limited to two (2) leaves of absence during the four-year curriculum.

D.    Return from Medical Leave of Absence

    1.    Students planning to return from medical leave should submit a letter to the Assistant Dean for Student Affairs requesting return from medical leave no later than thirty days before the intended date of return.

    2.    The student is then instructed by the Assistant Dean for Student Affairs to make an appointment with the Director of Student Health, School of Osteopathic Medicine, for evaluation of readiness to re-enter the program.

    3.    The Director of Student Health will present a report and recommendation to the Assistant Dean for Student Affairs for subsequent review and recommendations of the Committee.

    4.    The student will be placed in Supernumerary status upon return.

5.     In the absence of the thirty day required written notification from a student regarding their intention to return to the School from a medical leave of absence, the student will be administratively withdrawn.

E.     Return from Personal Leave of Absence

1.     Students planning to return from personal leave should submit a letter to the Assistant Dean for Student Affairs requesting return from personal leave no later than thirty days before the intended date of return.

2.     The student will be placed in supernumerary status upon return.

3.     In the absence of the thirty day required written notification from a student regarding their intention to return to the School from a personal leave of absence, the student will be administratively withdrawn.

## XVII.  Student Scholar

Students occasionally want to enhance their academic program with non-curricular opportunities such as research or clinical experiences that last longer than a typical elective period.  Those students are designated as Student Scholar.

A student who is approved for Student Scholar has active, full-time enrollment status. The student remains eligible for financial aid, student health insurance, parking, etc. Student Scholars are charged a Maintain Matriculation fee but are not charged tuition. The designation of Student Scholar is listed as a non-credit experience on the student's transcript for each approved term.

To obtain approval for the Student Scholar designation the student submits the "Request to Participate in a Non-Credit Clinical Experience" form along with a detailed description of what they plan to do to the Senior Associate Dean for Academic Affairs.  The Senior Associate Dean meets with the student to review the plan and approves or disapproves the plan in writing.  The student returns to their for-credit curricular requirements at the conclusion of the experience.

## XVIII. Withdrawal

Withdrawal from the School of Osteopathic Medicine is defined as permanent separation of an individual from the School of Osteopathic Medicine.  A student may voluntarily withdraw or may be involuntarily withdrawn by administrative action ("Administrative Withdrawal").

The withdrawal mechanism cannot be used to avoid dismissal for academic or disciplinary reasons. Withdrawal is not permitted once a disciplinary hearing has started. A student wishing to withdraw must submit a written request to the Senior Associate Dean for Academic Affairs who will notify the student of the actions taken.

Based upon the status of the individual in each course at the time of voluntary or administrative withdrawal, the grade will be recorded on the transcript as follows:

WNC = Withdrawn: No Credit
WP = Withdrawn: Passing
WF = Withdrawn: Failing

## XIX.    Dismissal

In cases where dismissal is being considered, the dismissal will not become final until the school's internal appeal process, if instituted, has been completed and a final determination has been made by the Dean.  The effective date of dismissal will be the date of final action by the Dean.  Pending the Dean's final decision and in accordance with school-specific policies governing student dismissals, the student is allowed to continue their participation in all academic activities for which they are enrolled and will continue to be bound by all school and university regulations and obligations, including those regarding the assessment and collection of tuition and fees.  Reasons for dismissal may include, but are not limited to, the following:

A.    Failure in three or more courses in an academic year.

B.    Failure of the same course two times.

C.    Failure of four courses in the first two years.

D.    Failure of the same COMLEX exam three times.

E.    Failure to complete all required coursework within the maximum time frame specified for their degree program (not including approved leaves of absence).

F.    Absence of the personal qualifications and attributes deemed necessary to perform the duties of an osteopathic medical student and the osteopathic medical profession.

## XX.    Graduation Requirements

All academic work must be completed no later than June 30 of a given year for students who wish to be counted as a graduate of that given year.  Students who must complete

additional work beyond the graduation ceremony date will receive their diploma following satisfactory completion of their requirements.  Students who successfully complete all requirements for graduation as prescribed by the faculty will be recommended by the Student Academic Progress Committee to the Dean for graduation. A list of the candidates for the degree of Doctor of Osteopathic Medicine must be presented by the Dean to the faculty for their approval.  Candidates approved by the faculty, for the distinction of Doctor of Osteopathic Medicine, are then eligible to receive the degree at the next commencement.  Candidates for the degree of Doctor of Osteopathic Medicine must exhibit the requisite knowledge and skills to complete the prescribed course of study and must also possess personal qualifications and attributes deemed necessary to perform the duties of the osteopathic medical profession.

## XXI.   Additional Required Clinical Experiences

Students who will be completing their degree requirements between July 1 – February 28 (after the May in which they were originally anticipated to graduate) will be scheduled for their remaining clinical rotations as well as one or more non-credit experiences, in order to keep their clinical skills current in preparation for residency.  Each student's schedule will be individually designed by the Clinical Education Coordinator, in consultation with the SOM Registrar, to ensure that all degree requirements will be met.

## XXII.   Graduation on Alternate Dates

The Doctor of Osteopathic Medicine (D.O.) degree is usually awarded in May after completion of the fourth-year curriculum.  A student who will complete all of his/her degree requirements after the month of May can be awarded the D.O. degree at a later time subsequent to completion of all degree requirements.  The maximum time for completion of the academic program is five years, not including any time on approved leave of absence.  To be awarded the D.O. degree, students must have the approval of all of the following: the SOM Student Academic Progress Committee, the SOM Executive Council, and the SOM Faculty.  A student must complete all degree requirements to receive the D.O degree.  Students will be permitted to participate in the Convocation and Commencement ceremonies in May if it is anticipated that they will complete their degree requirements by August 31st.  Students who complete their degree requirements after August 31st will be permitted to participate in the RowanSOM Commencement and the University Commencement ceremonies the following May and will be considered members of that graduating class for alumni purposes.

## XXIII. Awarding a D.O. Degree Posthumously

Rowan University School of Osteopathic Medicine seeks to recognize the academic achievements of its students.  This policy establishes guidelines for the posthumous awarding of a D.O. degree in the event a student dies before completing all of the requirements for the D.O. degree.  Consideration is given to academic and institutional integrity according to the following criteria:

A.      The student was enrolled in the second half of his/her final year of study at RowanSOM at the time of death.

B.      The student successfully completed the core clinical rotations.

C.      The student was in good standing and would likely have completed all of the degree requirements had he/she not died.


## XXIV. Standards of Satisfactory Academic Progress for Title IV and NJ Financial Aid Program Eligibility

A.      Purpose
This policy defines satisfactory academic progress for all School of Osteopathic Medicine (SOM) matriculating students.

B.      Accountability
The Senior Associate Dean for Academic Affairs, the Associate Registrar and the Student Academic Progress Committee ("the Committee") are responsible for implementing this policy.

C.      Policy
Satisfactory Academic Progress is the successful completion of degree requirements according to published increments that lead to degree completion within published time limits.  Sound academic principles require that students be required to maintain standards of satisfactory academic progress.  In addition, federal regulations require the School to establish satisfactory academic progress standards.  The following standards apply to all matriculating students, whether they are financial aid recipients or not.  Students who fail to maintain satisfactory academic progress during the established period of review must be informed of their academic status and may be placed on financial aid probation, suspended or dismissed, in accordance with the policies of the school.  Satisfactory Academic Progress will be reviewed each academic term.  The standards of satisfactory academic progress measure a student's performance in four areas:  completion rate, cumulative grade point average, COMLEX performance and maximum time frame.

1.      Completion Rate
Each academic term the Associate Registrar in consultation with the Committee will evaluate all students' academic progress by comparing the

number of attempted courses with the courses successfully completed during the academic term.  The program completion rate standards listed below differ between the Traditional curriculum and the Problem Based Learning curriculum due to the different number of total courses required for each of those programs.  A student in the Traditional D.O. degree program must complete the following minimum number of courses at the end of each academic term in order to be considered to be making Satisfactory Academic Progress.

While enrolled in the first and second year curriculum:
Terms 1 and 2 – The student must complete 7 courses out of 8 attempted. If the student does not complete 2 courses in one academic term or over both terms of the first year, the student will not be considered making satisfactory academic progress.  The student will be placed on a lightened load curriculum.
Terms 3 and 4– The student must complete 9 courses out of 10 attempted. If the student does not complete 2 courses in one academic term or over both terms of the second year, the student will not be considered making satisfactory academic progress.  The student will be placed on a lightened load curriculum.
(If needed to complete curriculum) Terms 5 and 6 – Students on the lightened load curriculum must complete all remaining courses in the first or second year curriculum to be considered making satisfactory academic progress.

While enrolled in the third and fourth year curriculum:
Terms 5 and 6 – The student must complete 8 courses out of 9 attempted. If the student does not, the student will not be considered making satisfactory academic progress.
Terms 7 and 8 – The student must complete 9 courses out of 10 attempted. If the student does not, the student will not be considered making satisfactory academic progress.
(If needed to complete curriculum) Terms 9 and 10 – The student must complete all remaining courses in the third and fourth year curriculum to be considered making satisfactory academic progress.

A student in the Problem-Based Learning (PBL) D.O. degree program must complete the following minimum number of courses at the end of each academic term in order to be considered to be making satisfactory academic progress.

While enrolled in the first and second year curriculum:
Terms 1 and 2 - A student in the PBL curriculum must successfully complete all courses attempted each term during the first two terms of their enrollment.  If the student does not, then the student will be offered the option of repeating the first year in the traditional curriculum.  If the

88

student does not complete 2 courses in one academic term or over both terms of the first year, the student will not be considered making satisfactory academic progress.

Terms 3 and 4 - A student in the PBL curriculum must successfully complete all courses attempted each term during the third and fourth terms of their enrollment. If the student does not complete 2 courses in one academic term or over both terms of the second year, the student will not be considered making satisfactory academic progress.

(If needed to complete curriculum) Terms 5 and 6 – PBL students who switch to the traditional curriculum must complete all courses attempted to be considered making satisfactory academic progress.

While enrolled in the third and fourth year curriculum:

Terms 5 and 6 – The student must complete 8 courses out of 9 attempted. If the student does not, the student will not be considered making satisfactory academic progress.

Terms 7 and 8 – The student must complete 9 courses out of 10 attempted. If the student does not, the student will not be considered making satisfactory academic progress.

(If needed to complete curriculum) Terms 9 and 10 – The students must complete all remaining courses in the third and fourth year curriculum to be considered making satisfactory academic progress.

Courses will be considered as attempted or earned as follows:

Attempted and Completed
Courses with a grade of H, HP, P, RP or AS (as well as LP and LPR grades that were in existence prior to academic year 2013-2014)
Courses successfully repeated (counted once towards attempted in the calculation of the completion rate)

Attempted but not Completed
Courses with a grade of F, INC, IP, WP, WNC or WF

Not Attempted and Not Completed
Courses with a grade of AUD or NC

2.      Cumulative Grade Point Average
Each academic term the Associate Registrar in consultation with the Committee will evaluate whether each student has achieved the equivalent of a "C" average.  SOM does not compute grade point average using letter grades.  The grade of P (Pass) is considered equivalent to a "C."

Each student must also achieve the standards established by the following SOM Academic Rules and Regulations:

a) Section IV. Grading
b) Section V. Remediation
c) Section VI. Auditing Courses
d) Section VII. Pre-clinical Years 1 and 2
e) Section VIII. Clinical Years 3 and 4
f) Section XI. COMLEX Policy and Procedures
g) Section XIV. Academic Probation
h) Section XIX. Graduation Requirements
i) Section XXI. Additional Required Clinical Experiences

When courses are repeated and passed, only the grade for the second instance of each course will be calculated toward the determination of satisfactory academic progress. Grades earned at another institution to remediate a failed course will be included in the determination of satisfactory academic progress. Grades earned at another institution by students who transfer to SOM will not be included in the determination of the "C" equivalent.

3. COMLEX

To be making Satisfactory Academic Progress a student must also complete the COMLEX Level 1, Level 2-CE and Level 2-PE. If the student fails any COMLEX three times the student will not be making satisfactory academic progress. Students must successfully complete COMLEX Level 1 to continue third-year rotations. If a student fails COMLEX 1, the student will be required to stop coursework and will be placed on Independent Study and will be placed on Financial Aid Warning. If a student remains on Independent Study for more than one year, the student will not be making Satisfactory Academic Progress and will not be eligible for financial aid and will be recommended for dismissal. If a student has not successfully completed all COMLEX requirements by the expected graduation date but has completed all other graduation requirements, the student will be designated as a supernumerary student and will be allowed a maximum of one additional year but will be enrolled as less than half-time and will not be eligible for financial aid.

4. Maximum Time Frame
Maximum time frame is defined by SOM as the maximum number of years after first enrollment that a student may complete SOM courses in the full-time pursuit of a degree. Each academic year the Associate Registrar and the Committee will evaluate whether each student can complete the program without exceeding the maximum years in which courses were attempted. A student must complete all requirements for their specific degree program within the maximum time frame specified in

90

the chart below, not including time for approved leave of absence (see Academic Rules and Regulations Section  XV. Leave of Absence).

| Degree Program | Standard Length | Maximum Length |
|---|---|---|
| D.O. - Student enters 1st year (Traditional or PBL) | 4 years | 5 years |
| D.O. - Lightened Load | 5 years | 6 years |
| D.O. - Student transfers into 2nd year | 3 years | 4 years |
| D.O. - Student transfers into 3rd year | 2 years | 3 years |
| D.O./J.D. | 6 years | 7 years |
| D.O./M.A. | 5 years | 6 years |
| D.O./M.B.A. | 5 years | 6 years |
| D.O./M.P.H. | 5 years | 6 years |
| D.O./ M.S. | 5 years | 6 years |
| D.O./Ph.D. | 7 - 9 years | 10 years |

5.   Notification of Lack of Satisfactory Academic Progress
Following the evaluations required by Sections A, B and C of this policy, the Committee will transmit written notification to all students who have not met the standards for Satisfactory Academic Progress, with copies to the Rowan University Office of Financial Aid, Senior Associate Dean for Academic Affairs, Director of Academic Affairs, Associate Registrar and the Center for Teaching and Learning.  The notification will indicate the nature of the deficiency, any methods that may be available for correcting the deficiency and any consequences that have resulted or may result, such as probation, suspension or dismissal.  A student may re-establish Satisfactory Academic Progress by demonstrating achievement of the completion rate and GPA required pursuant to Sections A and B of this policy within the maximum time frame required in Section C of this policy.

6.   Financial Aid Warning
Students who have been determined not to be making satisfactory academic progress will automatically be placed on Financial Aid Warning. While on Financial Aid Warning the student is eligible for financial aid for a period of one term. No appeal is necessary. The student will be reviewed again at the end of the next term of enrollment. The student must complete the following term's courses successfully as well as complete any other requirements established by the Committee. If the student is still not making satisfactory academic progress, see section 7. Appeal for Reinstatement of Financial Aid Eligibility and section 8. Financial Aid Probation.

7.   Appeal for Reinstatement of Financial Aid Eligibility
Students who have been on Financial Aid Warning in the previous academic term and are still not making satisfactory academic progress by the end of that term are not eligible for financial aid. A student may appeal

91

EXHIBIT 25

# JO ANNE SIMON, P.C.

356 Fulton Street, 3rd Floor
Brooklyn, New York 11201
www.joannesimon.com

(718) 852-3528 (V/TTY)                                                                                     Admitted NY & NJ Bars
(718) 875-5728 (FAX)

July 7, 2016

**Via E-Mail to cavalita@rowan.edu**

Thomas A. Cavalieri, D.O., FACOI, FACP
Office of the Dean
Rowan University School of Osteopathic Medicine
One Medical Center Drive, Suite 305
Stratford, NJ 08084

▮▮▮▮▮     ▮▮▮▮▮▮▮

Dear Dean Cavalieri:

     We represent ▮▮▮▮▮▮, an individual with disabilities who was dismissed from Rowan University School of Osteopathic Medicine (hereinafter "the medical school") in the fall of 2015.  We write to request that ▮▮▮▮▮ be readmitted to the medical school and placed on a leave of absence that will permit him to apply for testing accommodations for the COMLEX[1] and resume his education and training after he has passed the COMLEX exams.[2]

     We have thoroughly reviewed ▮▮▮▮▮ academic record, medical history, and correspondence with the medical school.  Based upon the record, it is apparent that ▮▮▮▮▮ inability to pass the COMLEX exams by the deadlines set by the medical school is not a reflection of his incompetence or lack of medical knowledge.  It is a reflection of the impact of his disabilities when they are not allowed to be effectively treated and when they are not appropriately accommodated.[3]

---

[1] The COMLEX is a licensing exam that is offered by the National Board of Osteopathic Medical Examiners and required by the medical school.

[2] ▮▮▮▮▮ only has three semesters remaining at the medical school.  He has successfully completed the didactic curriculum and only has three semesters of clerkships remaining.

[3] In <u>Bartlett v. New York State Board of Law Examiners</u> the court found that the Board of Law Examiners could not logically conclude that Bartlett failed the bar exam because she lacked knowledge or skills when it required her to take the bar exam without the extended time accommodations she needed and requested.  2001 WL 930792 (S.D.N.Y. Aug 15, 2001).  *See also* 34 C.F.R. §104.44 (c), which provides that "in its course examinations or other procedures for evaluating students' academic achievement in its program, a recipient to which this subpart applies shall provide such methods for evaluating the achievement of students [with disabilities] as *will best ensure that the results of the evaluation represents the student's achievement in the course*."

Prior to his dismissal from the medical school, ████████ was diagnosed with Generalized Anxiety Disorder, Panic Disorder, and Obstructive Sleep Apnea, and also experienced symptoms of depression. ████████ provided the medical school documentation verifying the existence and limitations of these disabilities, as well as documentation from his doctors recommending that a leave and extension to take the COMLEX exam be granted so that his treatment regimen, consisting of medication and cognitive behavioral therapy, would have time to become effective.

The medical school did not grant ████████ request for disability accommodations (in the form of a leave and extension to take the exams). As a consequence, ████████ was required to take the examination when, due to the aforementioned circumstances, the medical school knew or should have known that he was incapable of successfully completing it because of his medical condition at the time. The stress from all of this exacerbated the symptoms of ██ ████ Generalized Anxiety Disorder and Panic Disorder. ████████ panicked because he knew that he was not in the proper mental/emotional state to take the COMLEX. He subsequently contacted the National Board of Osteopathic Medical Examiners to inquire about cancellation and one of the board's representatives told him that he should consider applying for standardized testing accommodations.

Subsequent to his dismissal from medical school, ████████ discussed the necessity of testing accommodations with his clinicians, and they recommend that he be provided 50% extended time and off-the-clock breaks for his standardized exams. ████████ applied for these accommodations for the Graduate Management Admission Test (GMAT) and was approved.[4] These are the same accommodations that he wishes to request for the COMLEX.

████████ impairments, individually and especially when combined, substantially limit his ability to process information, concentrate, communicate, and take tests under the same conditions and time constraints as most people. ████████ is therefore protected by the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 *et seq.* (hereinafter "ADA") and Section 504 of the Rehabilitation Act of 1973, 28 U.S.C. § 794 *et seq.* (hereinafter "Section 504).[5] Broadly, these federal law guarantee ████████ equal opportunity and protection from disability discrimination in education and testing.

---

[4] The law says that the National Board of Osteopathic Medical Examiners must grant ████████ request for disability accommodations. In September 2015, the U.S. Justice Department issued an updated technical assistance manual for <u>all</u> testing entities, wherein it explained: "If a candidate requests the same testing accommodations he or she previously received on a similar standardized exam or high-stakes test, provides proof of having received the previous testing accommodations, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant the same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate." See, http://www.ada.gov/regs2014/testing_accommodations.html

[5] An individual has a disability within the meaning of the ADA and Section 504 if that individual suffers a physical or mental impairment that substantially limits one or more of the individual's major life activities or major bodily functions. 42 U.S.C. §12102(2)(A). Major life activities include activities such as reading, writing, learning, concentrating, sleeping and test-taking, and bodily functions include respiration and brain function. *See* Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, as Amended, 29 C.F.R. § 1630.2. The definition of who is protected is to be construed liberally and even prior to the 2008 amendments did

We believe that the medical school erred in dismissing ████████ when it knew of his disabilities, his disability related needs, and the recommendations of his doctors.[6]  We would like to believe that this was not done intentionally and that the school would welcome the opportunity to take the necessary steps to allow ████████ an equal opportunity to complete his medical degree and pursue a medical career.  Enclosed please find new documentation from ████████ doctors illuminating why he should have been accommodated (as opposed to dismissed), how his conditions have stabilized, and what he needs going forward with the COMLEX.[7]

Please contact me at your earliest opportunity to let me know if the medical school is interested in amicably resolving this matter.

Very truly yours,

*Mary J Goodwin*

Mary J. Goodwin, Esq.

Encl:  (1)    A June 16, 2016 letter from Howard B. Siegel, Ph.D.;
       (2)    A June 10, 2016 letter from Abby Kurien, M.D.;
       (3)    A November 13, 2015 letter from the Graduate Management Admission Council
              Approving ████████ to test with 50% extended time and extra off-the-clock
              breaks;

---

not require a failure to achieve.  *See also* Doe v. Samuel Merritt University, 2013 WL 428637, at *5-6 (N.D.Cal., Feb. 1, 2013), which explains how test-taking is a major life activity.

[6] Institutions shall make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of [disability], against a[n]… applicant or student." 34 C.F.R. § 104.44(a).

[7] In Argenyi v. Creighton University, Nos. 11–3336, 11–3461, 2013 WL 149803 (C.A.8. Jan. 15, 2013), the United States Court of Appeals for the 8th Circuit found that Plaintiff Argenyi's allegations of disability discrimination against his school were supported where his school refused to grant his requests for accommodation, and pointed to Argenyi's doctor's urging the school "to consider Argenyi's specific requests, explaining that Argenyi 'is the best person to judge what [assistance may be necessary] since no one else can really understand'" the impact of his disabilities.  Id. at 4.[7]  Indeed, the same is true for ████████████████████████ recommendations.  *See* Landefeld v. Marion General Hospital, Inc., 994 F.2d 1178 (6ᵗʰ Cir. 1993), the Court of Appeals for the 6ᵗʰ Circuit found that a hospital's prior knowledge of the plaintiff's (an internist with bipolar disorder) disability is highly probative evidence of the hospital dismissing the plaintiff solely in response to his disability. ."  *See also*, Wong v. The Regents of the University of California, 192 F.3d 807, 817 (9ᵗʰ Cir. 1999), which states that a school's ". . . deference is not absolute, however: courts still hold the final responsibility for enforcing the Acts, including determining whether an individual is qualified, with or without accommodation, for the program in question. We must ensure that educational institutions are not "disguis[ing] truly discriminatory requirements" as academic decisions; to this end, "[t]he educational institution has a 'real obligation ... to seek suitable means of reasonably accommodating a handicapped person *and to submit a factual record indicating that it conscientiously carried out this statutory obligation.'* " Zukle, 166 F.3d at 1048 (quoting Wynne v. Tufts Univ. Sch. of Med., 932 F.2d 19, 25-26 (1st Cir.1991) (en banc) (Wynne I)) (emphasis added).  *See* Williams v. Clarke County Department of Human Resources, 834 F.Supp.2d 1310, 1320 (S.D. Ala., 2011) ("The fundamental legal principle on which Williamson's failure-to-accommodate claim founders is that an employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.") (internal citations omitted).

cc:     ████████████
        Linda Boyd, D.O., Senior Associate Dean for Academic Affairs
        Kathryn C. Lambert, DO, FAOASM, Assistant Dean for Student Affairs
        George Scott, D.O., Assistant Dean for Clinical Education
        Richard Jermyn, D.O., Chairman of the Student Academic Progress Committee
        Vincent J. DeRisio, D.O., FCAP, Associate Dean for Clinical Affairs
        Deborah Podolin, Ph.D., Voting Member, Student Academic Progress Committee
        Millicent Channell, D.O., Voting Member, Student Academic Progress Committee
        Martin Forsberg, M.D., Voting Member, Student Academic Progress Committee
        Gary Goldberg, Ph.D., Voting Member, Student Academic Progress Committee
        Marita Lind, M.D., Voting Member, Student Academic Progress Committee
        Thomas Newmark, M.D., Voting Member, Student Academic Progress Committee
        Aubrey Olson, D.O., Voting Member, Student Academic Progress Committee
        Victor J. Scali, D.O., Voting Member, Student Academic Progress Committee
        Andriy Pavlenko, M.D., Voting Member, Student Academic Progress Committee
        Michele Tartaglia, D.O, Voting Member, Student Academic Progress Committee
        Marcia Watson, D.O., Voting Member, Student Academic Progress Committee

Howard B. Siegel, Ph.D.
Clinical Psychologist
7 Kensington Ave
Jersey City, N.J. 07304
201-333-9322

June 16, 2016

██████████████

To Whom It May Concern:

I am writing to you in support of ██████████ petition for readmission to Rowan University School of Osteopathic Medicine. ██████████ has been a patient of mine in individual psychotherapy since March 30, 2015. He has seen me for weekly sessions and our most recent session was on June 9, 2016.

I am very familiar with ██████████ disabilities and the difficulties that he experienced last year at Rowan prior to his dismissal. I found that he satisfied diagnostic criteria for Generalized Anxiety Disorder (F 41.1) and Panic Disorder (F41.0). His symptoms included sleep disruptions, palpitations, irritability, self-doubt, excessive worry and ruminations. It turns out that he also suffered from sleep apnea.

Over the past several months an effective combination of pharmacological intervention and cognitive behavior therapy has enabled ██████████ to live a more productive life, even with the added anxiety caused by his dismissal from Rowan University School of Osteopathic Medicine. I had recommended that the medical school allow him to go on medical leave until his conditions were better managed. This request was denied despite the fact that it takes several weeks to months to determine if the medication or cognitive behavior therapy was effective.

██████████ dismissal from medical school was very traumatic for him and caused him to experience even more anxiety. However, in the many months that have followed he has worked closely with his doctors, myself included, to develop a very effective treatment regimen. He also had to deal recently with the unfortunate passing of his grandmother while he was visiting with her in Florida.

He currently holds a position with ██████████ where he is responsible for leading important research initiatives and prior to that he held another competitive research position. is ability to maintain balance with his personal life and the demands of his high level position, while simultaneously studying to keep his medical knowledge fresh, demonstrate to me that ██████████ possesses the tools needed to resume medical school and pursue a successful medical career.

I recommend that ███████ be permitted to return to Rowan University School of Osteopathic Medicine on a leave of absence status until he is able to request and obtain testing accommodations for the COMPLEX, namely extra off-the-clock breaks and extended test time of at least 50% extended time. Theses accommodations will help him to utilize learned compensatory strategies too restore his focus and reduce the anxiety and panic symptoms that he experienced on this exam several times prior. ███████ applied for 50% extended time and accommodations and extra off-the-clock breaks for the Graduate Management Admission Test and this request was approved. I believe that ████ ████ deserves a fair opportunity to resume and complete his medical education and I am hopeful that Rowan University will readmit him as described for the fall 2016 semester.

Please feel free to contact me should you have any questions.

Yours truly,

Howard B. Siegel, Ph.D.

**Palisade Behavioral Care**
**221 Palisade Avenue**
**Jersey City, NJ 07306**
**Phone (201) 656-3116**
**Fax (201) 656-9044**

June 10, 2016

Rowan University
School of Osteopathic Medicine
One Medical Center Drive
Stratford, New Jersey 08084-1501

███████████████

To Whom It May Concern:

I am a medical doctor specialized in psychiatry.  I completed post-graduating medical training in both neurology at New York University Hospital and in psychiatry at Rutgers, the State University of New Jersey. I have significant experience helping patients manage a range of mental health concerns including anxiety disorder, panic disorder, and post-traumatic stress disorder (PTSD). I spent a significant part of my career serving patients in the Veterans Administration system. I write to follow up on my previous letters that have been submitted to Rowan University School of Osteopathic Medicine on ████████ behalf.

As you know, I've been treating ████████ for nearly a year.  He came to me with a previously diagnosed Anxiety Disorder and had been experiencing an increase in the severity and frequency of his anxiety symptoms.  After my own clinical assessment I determined that he met criteria for both a Generalized Anxiety Disorder and a Panic Disorder.  In my prior letters I occasionally referred to ████████ Generalized Anxiety Disorder as "test anxiety" because these symptoms have been consistently pronounced in the high stakes setting of the COMLEX, but I wish to clarify that ████████ anxiety symptoms also exist outside of the testing environment and have affected him in his private life and in his prior dealings with Rowan University.

████████ anxiety disorders caused him to experience significant ongoing worry and sleep disturbances which caused him to feel, amongst other things, on edge, irritable, and easily fatigued. ████████ has reported a significant amount of anxiety and panic on timed tasks, resulting in shortness of breath, dizziness, and difficulty focusing. As a compensatory strategy, ████████ subconsciously avoided situations that triggered these panic symptoms.  This included not only the COMLEX itself, but communications with his Rowan University superiors about his taking and passing the exam by a certain time.  Also frustrating matters was that ████████ did not know that he needed and could qualify for extended time accommodations on exams such as the COMLEX.

Over time, ████████ has benefited greatly from a combination of medication and cognitive behavioral therapy with his therapist, Dr. Siegel.  However, it is clear to me, as a professional who is familiar with his strengths and weaknesses, that he requires extended time testing accommodations going forward.  I recommend that ████████ be permitted to pursue exam accommodations of 50% extended time with breaks or 100% extended time from the National Board of Osteopathic Medicine and complete his medical education at Rowan University.  Anxiety disorders can happen to anyone at any time in their life, no one is immune.  But once they, like ████████ have been able to find an effective treatment regimen (which, unfortunately, does not happen "overnight"), they are able to function at high levels and succeed.  I strongly support ████████ readmission to Rowan University so that he can be given an opportunity to succeed and pursue a career as a doctor.

Sincerely,

Abby Kurien, M.D.
AK/mp

From: **testingaccommodations** test.ngaccommodat ons@gmac.com ■
Subject: ▇▇▇▇▇ - regard ng your request for GMAT accommodat ons
Date: November 13, 2015 at 3:37 PM
To: ▇▇▇▇▇▇▇▇▇▇





November 13, 2015

Dear ▇▇▇▇ :
We have reviewed your request for GMAT® test accommodations in accordance with GMAT® Test Accommodations Guidelines within the framework of the Americans with Disabilities Act as recently amended. You have been approved for 50% additional time and one additional break when you sit for the GMAT exam. Other accommodations: separate testing room.

| | |
|---|---|
| Analytical Writing Assessment | 45 Minutes |
| Break | 8 Minutes (Additional Break) |
| | |
| Integrated Reasoning | 45 Minutes |
| Break | 8 Minutes |
| Quantitative | 112.5 Minutes |
| Break | 8 Minutes |
| | |
| Verbal | 112.5 Minutes |

This approval may be used for up to five administrations of the GMAT® test within one year of the approval date listed above (subject to payment and to scheduling availability). This accommodation approval will expire in one year's time.  You must space retakes of the exam at least 16 days apart and you cannot take the exam more than 5 times in a 365 day period.  You must use the contact information below to schedule and pay for any test appointments that involve accommodations.  Note that a standard testing appointment cannot be changed to an accommodated testing.  If you schedule a standard appointment without using the scheduling method described below, your standard appointment will NOT include any accommodations and you will be subject to GMAC's cancellation fee policy.
In order to schedule and pay for your accommodated testing, you will need to contact the GMAT Accommodations Scheduling Specialist in your region using the information below:
For candidates in North and South America, call:
Telephone (toll-free): 1-800-466-0450 7 am to 7 pm Central Time, Monday - Friday
Telephone: 1-952-681-3948, 6 am to 7 pm Central Time, Monday - Friday
Fax: 1-952-681-3681

For candidates in the Asia-Pacific Region, call:
Telephone: +852-3077-4926, 9 am to 6 pm AEST, Monday - Friday
In India: +91 120 439 7830, 9 am to 6 pm Indian Standard Time, Monday - Friday
Fax: +60 3 8319 1092
For candidates in China, call:
Telephone: 86-10-82345675, 8:30 am to 5 pm China Standard Time, Monday - Friday
Fax: 86-10-61957800

For candidates in Europe, Middle East, or Africa please email a copy of your accommodations letter and five possible dates that you would like to take the GMAT exam to GMATCandidateServicesEMEA@Pearson.com.

All testing appointments are scheduled on a first-come, first served basis. Pearson VUE will make every effort to schedule an appointment for you within 30 days of your requested testing date. Please be aware that no unauthorized personnel may enter the testing room or remain in the reception area. If you have a physical disability and require assistance in activities such as reaching the testing room, using the rest room or eating lunch, you will need to request an additional accommodation and be very specific in outlining the functions this person will perform for you. Test center staff can provide only services directly related to test taking.

To aid your preparation, the GMATPrep® software contains free practice questions and two full-length GMAT® exams. As you have been granted 50% extra time, you can unlock this feature as follows:

• Either download the GMATPrep® software from www.mba.com/gmatprep or request a copy of the software on CD when you book your exam (may take up to 4 weeks to arrive).
• After you have installed the software, start GMATPrep®.
• From the home screen, click 'Settings' (bottom left corner). The Settings screen will open.
• Enter the following code in the Accommodations box: K7OJ-N39M-B3GKL-ZERT.
• Click the Submit button and 50% extra time will be activated.

Additionally, the GMAT Official Guide is available for purchase as a digital talking book. To purchase, please visit www.mba.com/dtb.

Cordially,

GMAT® Disability Services

China | India | United Kingdom | USA          GMAC® | Makers of the GMAT® Exam | gmac.com

The information in this transmission is confidential and intended only for the recipient listed above. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution of this message, or the taking of any action based upon it, is strictly prohibited.

# JO ANNE SIMON, P.C.
356 Fulton Street, 3rd Floor
Brooklyn, New York 11201
www.joannesimon.com

(718) 852-3528 (V/TTY)                                                    Admitted NY & NJ Bars
(718) 875-5728 (FAX)

September 23, 2016

**<u>Via Email to sabnis@rowan.edu</u>**

Monica Sabnis, Esq.
Assistant General Counsel
Bole Hall
201 Mullica Hill Road
Glassboro, NJ 08028

   RE: ███████ **Rowan University School of Osteopathic Medicine**

Dear Ms. Sabnis:

   I write in response to your letter of August 8, 2016.  We disagree with Rowan School of Osteopathic Medicine's ("RowanSOM") assertions that it provided ███████ "ample opportunity to be successful at RowanSOM."  The record demonstrates that while RowanSOM may have provided some modifications, it failed to accommodate ███████ disabilities in *every* instance and these failures to accommodate made it impossible for him to compete on a level playing field and pass the COMLEX I exam by the deadlines RowanSOM arbitrarily imposed.  RowanSOM has violated the Americans with Disabilities Act, as amended, and Section 504 of the Rehabilitation Act of 1973 – we are surprised by its reluctance to seize this opportunity to take voluntary corrective action.

   In your August 8th letter, you write: "███████ has attempted the COMLEX I exams four (4) times and has been unsuccessful in each attempt.  He has been granted ample opportunity to succeed on this exam including opportunities to participate in extensive review courses and granting of postponements of the exam, nevertheless, he has not been able to successfully complete the exam." ███████ *has not been granted an equal opportunity to succeed and complete the COMLEX. .*

   RowanSOM knew that ███████ was diagnosed with Generalized Anxiety Disorder, Panic Disorder, and Obstructive Sleep Apnea, and also experienced symptoms of depression.  RowanSOM possessed documentation from several qualified doctors who were familiar with ███ ███████ disabilities (Dr. Siegel, Dr. Kurien, and Dr. Bhatnagar) and they all recommended a leave of absence and extension to take the COMLEX that RowanSOM ignored and/or refused to grant.  The record demonstrates that RowanSOM knew that it was requiring ███████ to take the COMLEX I exam before his new treatment regimen (consisting of medication and cognitive behavioral therapy) could be fully assessed and deemed effective.  RowanSOM also acted in a

manner that increased the severity of ████████ anxiety and depression symptoms, and was well aware that its actions would set his treatment progress further back.

      In your August 8th letter you assert that "[a]ny additional opportunities would be in violation of RowanSOM policies and would be an unacceptable relaxation of RowanSOM's academic standards.  Specifically, at this point ████████ is unable to complete the RowanSOM program in the required five (5) year timeframe."  *To the contrary, an additional opportunity is the only acceptable path forward and would be a step in the right direction to correcting RowanSOM's failure to comply with its obligations under the applicable disability civil rights laws*.

      The federal enforcement regulations mandate that covered entities such as RowanSOM "must make such modifications to that course as are necessary to ensure that the place and manner in which the course is given are accessible to individuals with disabilities… Required modifications may include changes in the length of time permitted for the completion of the course."[1] Additionally, institutions such as RowanSOM "shall make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of [disability], against a… student" [2]  and in its "procedures for evaluating students' academic achievement in its program…. provide such methods for evaluating the achievement of students [with disabilities] as will best ensure that the results of the evaluation represents the student's achievement in the course."[3]

      According to your letter RowanSOM permits students without disabilities up to five years to complete the RowanSOM program.  Under the disability civil rights laws, it would have been appropriate to permit ████████ greater than 5 years if doing so would have leveled the playing field for him.  As stated in my prior letter, we have thoroughly reviewed ████████ academic record, medical history, and correspondence with the medical school, and it is apparent that ████ inability to pass the COMLEX I exam and complete the RowanSOM program by the deadlines set by the medical school is *not* a reflection of any incompetence or lack of medical knowledge on his part.  It is a reflection of the impact of his disabilities when they are not allowed to be effectively treated and when they are not appropriately accommodated.[4]   The law does not require RowanSOM to lower its academic requirements, and we would never request that it do so.  However the law does require RowanSOM to level the playing field for ████████ and not erect unnecessary barriers to his success.

---

[1] 28 C.F.R. § 36.309(c)(1), (2) and (5) (emphasis added).  *See also* Jones v. National Conference of Bar Examiners, No. 5:11-cv-174. 2011 WL 3321507 (D. Vt. Aug. 2, 2011), where the District Court found that the Department of Justice's Title regulations were entitled to deference under U.S. Supreme Court's decision in Chevron v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).

[2] 34 C.F.R. § 104.44(a).

[3] 34 C.F.R. §104.44 (c).

[4] In Bartlett v. New York State Board of Law Examiners the court found that the Board of Law Examiners could not logically conclude that Bartlett failed the bar exam because she lacked knowledge or skills when it required her to take the bar exam without the extended time accommodations she needed and requested.  2001 WL 930792 (S.D.N.Y. Aug 15, 2001).

The United States Court of Appeals for the Second Circuit recently addressed this very issue in the case of Dean v. University at Buffalo School of Medicine and Biomedical Sciences, 804 F.3d 178 (2d Cir. 2015).  In Dean, the plaintiff, an individual with disabilities similar to ████ ████, was dismissed from his M.D. program for failure to pass Step 1 of the USMLE by the deadline that was set by his medical school.  The school's handbook permitted one eight-week study leave, but the school granted plaintiff several additional six-week study leaves – still, plaintiff was unable to pass Step 1.  Plaintiff informed his medical school dean that he was dealing with stress, anxiety, and depression that prevented him from being able to prepare for and pass the exam; he first asked for one additional month to prepare, but unlike ████████ he did not request a medical leave.  Plaintiff ████ was subsequently treated by a psychologist and internist who recommended a three-month leave of absence, and the school was informed that this leave of absence was necessary to permit the plaintiff sufficient time to continue his treatment regimen and effectively manage his disabilities.  The school eventually granted a six-week leave of absence and stated that no further delays would be permitted.  Plaintiff subsequently met with a psychiatrist who "supported a leave of absence to permit Dean's treatment interventions to progress and noted a six-to-eight-week timeframe for anti-depressant medications to achieve effectiveness."[5] Plaintiff provided this new documentation and once again requested a three month leave of absence so that "the medications will reach steady state and be therapeutic, so I can focus on preparing for the retake of Step 1."  An extension was granted, but it was significantly less than the three months that Dean had requested.  This leave was insufficient to allow Dean time to recover and study for the exam, so he failed and his school dismissed him.  Dean subsequently brought suit in the United States District Court for the Western District of New York. The medical school moved for summary judgment, asserting that it accommodated Dean's disabilities, and the motion was granted by the District Court.  However, *the Court of Appeals reversed the decision and held*:

> Dean was not afforded the accommodation he sought. In his June 1, 2007 letter to Dr. Cain requesting reconsideration of the leave of absence set to expire at the end of that month, Dean asked for a three-month leave to allow "the medication [to] reach steady state and be therapeutic, so [he] c[ould] focus on preparing for the retake of Step 1." App'x at 311… Dr. Warren had counseled that Dean "would need at least 6 to 8 weeks before [he] could see some improvement from the medication." App'x at 311. As Dean requested a period some five to seven weeks longer than necessary for the medication to become effective, a trier of fact could find that the additional time Dean sought was clearly to prepare for the Step 1 retake. The leave of absence committee had little difficulty discerning the dual purpose of Dean's request for leave. In its May 22, 2007 letter to Dr. Nielsen, the committee recommended that Dean's requested three-month leave period be limited to approximately six weeks of medical leave, as the "committee fel[t] that [Dean] should not be granted a leave of absence to gain more 'study time.' " App'x at 169. On this record, a reasonable juror could find that the leave Dean requested included a period for

---

[5] 804 F.3d at 184.

exam preparation and that Defendants understood the scope of his request.

While Defendants did not provide the accommodation Dean sought, it is undisputed that they afforded him an alternative one. Dean was permitted a cumulative leave period spanning approximately ten weeks—from May 21, 2007, when he formally requested leave, until July 28, 2007, when he was required to sit for the Step 1 exam. The record establishes that by mid-July Dean's symptoms had lessened to the extent that he was able to engage in productive study. Thus, by the July 28 deadline, Dean enjoyed at least some depression-free study time. We must therefore decide, on the summary judgment record before us, whether this modification to the exam deadline was a reasonable accommodation.

Where a defendant's educational institution has implemented or offered an accommodation, the institution will be entitled to summary judgment only if the undisputed record reveals that the plaintiff was accorded a " 'plainly reasonable' " accommodation. Noll v. Int'l Bus. Machs. Corp., 787 F.3d 89, 94 (2d Cir.2015) (quoting Wernick v. Fed. Reserve Bank of N.Y., 91 F.3d 379, 385 (2d Cir.1996)). The hallmark of a reasonable accommodation is effectiveness. *See* U.S. Airways, Inc. v. Barnett, 535 U.S. 391, 400, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002) ("It is the word 'accommodation,' not the word 'reasonable,' that conveys the need for effectiveness."). The accommodation need not be "perfect" or the one "most strongly preferred" by the student-plaintiff, but it still must be "effective," Noll, 787 F.3d at 95. Given the "fact-specific" nature of the question of whether a measure to accommodate a student's disability is a reasonable accommodation, this determination "must be made on a case-by-case basis." Wernick, 91 F.3d at 385.

Defendants posit that the accommodation offered Dean was reasonable since he had studied during two extended periods of leave prior to any reported mental health condition, such that additional study time would not have been necessary. In alluding to the year Dean spent preparing for the Step 1 exam, the district court appeared to embrace this theory.

We disagree. As an initial matter, we harbor serious doubt that earlier periods of study suffice to prepare a student for a later examination, particularly when the student twice failed that very exam… a juror could reasonably infer that the abbreviated study period encompassed within Dean's leave would not have been effective. *See Barnett,* 535 U.S. at 400, 122 S.Ct. 1516 ("An *ineffective* 'modification' or 'adjustment' will not *accommodate* a

disabled individual's limitations."). We therefore cannot conclude that Defendants afforded Dean a plainly reasonable accommodation.[6]

In <u>Dean</u> the medical school granted several exam extensions and leaves of absences that permitted the plaintiff's treatment regimen to become effective, but the Court was *still* unable to find that the school satisfied its legal obligations to accommodate Dean. Why? Because the medical school refused to grant the full leave of absence requested by Dean.

Here, RowanSOM was less complicit than the medical school in <u>Dean</u>. RowanSOM did not even grant ███████ sufficient leave time to allow his treatment regimen to become therapeutic, let alone afford him sufficient time to study and prepare for another COMLEX attempt. An 8/12/2015 letter from Dr. Siegel explained how RowanSOM's actions made ███████ anxiety and panic worse. An August 4, 2015 letter from Dr. Kurien communicated the same and recommended that RowanSOM allow ███████ "to void this COMLEX USA Level-1 examination taken on July 30, 2015 and grant him permission to retake his exam once the course of the medical treatment has become effective, which I anticipate will take a minimum of four weeks." An August 3, 2015 letter from Dr. Bhatnagar who was treating ███████ obstructive sleep apnea explained that his "sleep disturbance is affecting his ability to study for his exams. Work up and treatment should be addressed in the next 6 to 8 weeks. Please allow him to postpone his COMLEX exam while I work with him to addresses [sic] his sleep issues." On 8/20/2015 ███████ contacted Dr. Lambert to request a medical leave of absence effective 8/20/2015 to 10/01/2015. She informed ███████ that the SAPC must approve the leave, yet, when ███████ presented his case to the SAPC, the committee was more concerned with how he would be able to pass the COMLEX without future panic attacks and did not grant ███████' requested accommodation. We are confident that a trier of fact would find that RowanSOM acted arbitrarily and/or capriciously by refusing to grant ███████ requested leave of absence and that this resulted in discrimination on the basis of disability.[7]

---

[6] 804 F.3d at 189-191.

[7] In <u>Argenyi v. Creighton University</u>, Nos. 11–3336, 11–3461, 2013 WL 149803 (C.A.8. Jan. 15, 2013), the United States Court of Appeals for the 8th Circuit found that Plaintiff Argenyi's allegations of disability discrimination against his school were supported where his school refused to grant his requests for accommodation, and pointed to Argenyi's doctor's urging the school "to consider Argenyi's specific requests, explaining that Argenyi 'is the best person to judge what [assistance may be necessary] since no one else can really understand'" the impact of his disabilities. <u>Id.</u> at 4.[7] *See* <u>Landefeld v. Marion General Hospital, Inc.</u>, 994 F.2d 1178 (6th Cir. 1993), the Court of Appeals for the 6th Circuit found that a hospital's prior knowledge of the plaintiff's (an internist with bipolar disorder) disability is highly probative evidence of the hospital dismissing the plaintiff solely in response to his disability." *See also*, <u>Wong v. The Regents of the University of California</u>, 192 F.3d 807, 817 (9th Cir. 1999), which states that a school's ". . . deference is not absolute, however: courts still hold the final responsibility for enforcing the Acts, including determining whether an individual is qualified, with or without accommodation, for the program in question. We must ensure that educational institutions are not "disguis[ing] truly discriminatory requirements" as academic decisions; to this end, "[t]he educational institution has a 'real obligation ... to seek suitable means of reasonably accommodating a handicapped person *and to submit a factual record indicating that it conscientiously carried out this statutory obligation.'* " <u>Zukle</u>, 166 F.3d at 1048 (quoting <u>Wynne v. Tufts Univ. Sch. of Med.</u>, 932 F.2d 19, 25-26 (1st Cir.1991) (en banc) (<u>Wynne I</u>)) (emphasis added). *See* <u>Williams v. Clarke County Department of Human Resources</u>, 834 F.Supp.2d 1310, 1320 (S.D. Ala., 2011) ("The fundamental legal principle on which Williamson's failure-to-accommodate claim founders is that an employer's duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made.") (internal citations omitted).

██████████ has advised counsel that if RowanSOM does not reconsider its position on this matter and permit him to be readmitted (on leave status) so that he can request testing accommodations for the COMLEX[8], pass the COMLEX, and have an opportunity to complete his remaining degree requirements, he intends to file a complaint of disability discrimination in federal district court where he will seek further relief. We remain hopeful that this matter can be amicably resolved. Please inform us of the school's intentions by no later than Friday, October 7, 2016.

Very truly yours,

*Mary J. Goodwin*

Mary J. Goodwin, Esq.

Enclosures: (1) September 2, 2016 letter from the LSAC approving extended time accommodations for the LSAT;

    (2) November 13, 2015 letter from the GMAC approving extended time accommodations for the GMAT.

cc: ██████████
  Nabina Sinha, Esq
  United States Department of Justice, Disability Rights Section

---

[8] Since being dismissed from RowanSOM, ██████████ has been granted extended time disability accommodations for the standardized exams offered by the Graduate Management Admission Council and the Law School Admission Council. He is entitled to these same accommodations for the COMLEX which will level the playing field for him so that he can fully demonstrate his knowledge and achieve a passing score. In September 2015, the U.S. Justice Department issued an updated technical assistance manual for all testing entities, wherein it explained: "If a candidate requests the same testing accommodations he or she previously received on a similar standardized exam or high-stakes test, provides proof of having received the previous testing accommodations, and certifies his or her current need for the testing accommodations due to disability, then a testing entity should generally grant the same testing accommodations for the current standardized exam or high-stakes test without requesting further documentation from the candidate." See, http://www.ada.gov/regs2014/testing_accommodations html



Law School Admission Council
662 Penn Street, Box 8512, Newtown, PA 18940-8512
P: 215.968.1001 • F: 215.504.1420

**ACCOMMODATED TESTING**

September 2, 2016



Dear ███████████:

The Law School Admission Council (LSAC) has reviewed your request for accommodations on the December 3, 2016 Law School Admission Test (LSAT).

**Test Administration Information:**

Room Type: SEPARATE - if deemed appropriate by LSAC, candidates with like accommodations may be tested together.

**You have been granted the following accommodations:**

Break Time (8 min break between each section of the test)

Test Time (53 mins for each multiple choice section)

Test Time (53 mins for writing sample)

Typically two weeks prior to the published date, a letter confirming your accommodations will be available through your online account. It is imperative that you review this letter carefully as it will contain information about the center where you are scheduled to test, the name and telephone number of the test center supervisor, and other instructions (if applicable). **Please note**: LSAC cannot guarantee that you will test at the center for which you hold an admission ticket. Additionally, your test may be scheduled for an alternate date/time.

Sincerely,
Accommodated Testing

Direct Inquiries to:

Phone: (215) 968-1001
E-mail: accom@LSAC.org
Fax: (215) 504-1420

From: **testingaccommodations** test.ngaccommodat ons@gmac.com ■
Subject: ▇▇▇▇▇ - regard ng your request for GMAT accommodat ons
Date: November 13, 2015 at 3:37 PM
To: ▇▇▇▇▇▇▇▇





November 13, 2015

Dear ▇▇▇▇ :
We have reviewed your request for GMAT® test accommodations in accordance with GMAT® Test Accommodations Guidelines within the framework of the Americans with Disabilities Act as recently amended. You have been approved for 50% additional time and one additional break when you sit for the GMAT exam. Other accommodations: separate testing room.

| | |
|---|---|
| Analytical Writing Assessment | 45 Minutes |
| Break | 8 Minutes (Additional Break) |
| | |
| Integrated Reasoning | 45 Minutes |
| Break | 8 Minutes |
| Quantitative | 112.5 Minutes |
| Break | 8 Minutes |
| | |
| Verbal | 112.5 Minutes |

This approval may be used for up to five administrations of the GMAT® test within one year of the approval date listed above (subject to payment and to scheduling availability). This accommodation approval will expire in one year's time.  You must space retakes of the exam at least 16 days apart and you cannot take the exam more than 5 times in a 365 day period.  You must use the contact information below to schedule and pay for any test appointments that involve accommodations.  Note that a standard testing appointment cannot be changed to an accommodated testing.  If you schedule a standard appointment without using the scheduling method described below, your standard appointment will NOT include any accommodations and you will be subject to GMAC's cancellation fee policy.
In order to schedule and pay for your accommodated testing, you will need to contact the GMAT Accommodations Scheduling Specialist in your region using the information below:
For candidates in North and South America, call:
Telephone (toll-free): 1-800-466-0450 7 am to 7 pm Central Time, Monday - Friday
Telephone: 1-952-681-3948, 6 am to 7 pm Central Time, Monday - Friday
Fax: 1-952-681-3681

For candidates in the Asia-Pacific Region, call:
Telephone: +852-3077-4926, 9 am to 6 pm AEST, Monday - Friday
In India: +91 120 439 7830, 9 am to 6 pm Indian Standard Time, Monday - Friday
Fax: +60 3 8319 1092
For candidates in China, call:
Telephone: 86-10-82345675, 8:30 am to 5 pm China Standard Time, Monday - Friday
Fax: 86-10-61957800

For candidates in Europe, Middle East, or Africa please email a copy of your accommodations letter and five possible dates that you would like to take the GMAT exam to GMATCandidateServicesEMEA@Pearson.com.

All testing appointments are scheduled on a first-come, first served basis. Pearson VUE will make every effort to schedule an appointment for you within 30 days of your requested testing date. Please be aware that no unauthorized personnel may enter the testing room or remain in the reception area. If you have a physical disability and require assistance in activities such as reaching the testing room, using the rest room or eating lunch, you will need to request an additional accommodation and be very specific in outlining the functions this person will perform for you. Test center staff can provide only services directly related to test taking.

To aid your preparation, the GMATPrep® software contains free practice questions and two full-length GMAT® exams. As you have been granted 50% extra time, you can unlock this feature as follows:

• Either download the GMATPrep® software from www.mba.com/gmatprep or request a copy of the software on CD when you book your exam (may take up to 4 weeks to arrive).
• After you have installed the software, start GMATPrep®.
• From the home screen, click 'Settings' (bottom left corner). The Settings screen will open.
• Enter the following code in the Accommodations box: K7OJ-N39M-B3GKL-ZERT.
• Click the Submit button and 50% extra time will be activated.

Additionally, the GMAT Official Guide is available for purchase as a digital talking book. To purchase, please visit www.mba.com/dtb.

Cordially,

GMAT® Disability Services

China | India | United Kingdom | USA                  GMAC® | Makers of the GMAT® Exam | gmac.com

The information in this transmission is confidential and intended only for the recipient listed above. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy. If you are not the intended recipient, you are hereby notified that any disclosure, copying or distribution of this message, or the taking of any action based upon it, is strictly prohibited.

RE: █████████████████████████████████

Sabnis, Monica Virmani [sabnis@rowan.edu]

To:
 Mary J Goodwin

Mary,

Thanks for your email.  The University is willing to offer ████ to restart his academic program at Rowan SOM, however, we cannot agree to your proposal.

Thanks,
Monica

Monica V. Sabnis, Esquire

Assistant General Counsel

Rowan University

201 Mullica Hill Road

Glassboro, NJ 08028

856-256-5113 (phone)

Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information intended for the designated recipient(s) named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify me immediately by replying to this message and deleting it from your computer. Thank you.

**From:** Mary J Goodwin [mailto:Mary@joannesimon.com]
**Sent:** Monday, November 07, 2016 4:37 PM
**To:** Sabnis, Monica Virmani <sabnis@rowan.edu>
**Subject:** RE: ███████/Rowan University School of Osteopathic Medicine

Good afternoon Monica,

When do you expect that you will have a decision from your client?

Best regards,

Mary



----------------------------------------
**Mary J. Goodwin, Esq.**
----------------------------------------

**Jo Anne Simon, P.C.**
356 Fulton Street, 3rd Floor
Brooklyn, New York 11201

(T): 718-852-3528
(F): 718-875-5728
(E): Mary@JoAnneSimon.com
(w): www.JoAnneSimon.com


------------------------------
CONFIDENTIALITY NOTICE: The information contained in this e-mail may contain confidential information which is protected by the ATTORNEY-CLIENT PRIVILEGE. The information is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that dissemination, distribution or copying of this information is prohibited. If you have received this communication in error, please notify me by e-mail.


------------------------------

---

**From:** Sabnis, Monica Virmani [sabnis@rowan.edu]
**Sent:** Thursday, October 27, 2016 2:28 PM
**To:** Mary J Goodwin
**Subject:** RE: ████████████████████████████████████████

Thanks, Mary.  I will discuss this with my client.  And please note our offer to allow ████ to be readmitted and start his medical school career over is still an option.



Thanks,

Monica

Monica V. Sabnis, Esquire

Assistant General Counsel

Rowan University

201 Mullica Hill Road

Glassboro, NJ 08028

856-256-5113 (phone)

Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information intended for the designated recipient(s) named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify me immediately by replying to this message and deleting it from your computer. Thank you.

**From:** Mary J Goodwin [mailto:Mary@joannesimon.com]
**Sent:** Thursday, October 27, 2016 2:12 PM
**To:** Sabnis, Monica Virmani <sabnis@rowan.edu>
**Subject:** ███████/Rowan University School of Osteopathic Medicine

Hi Monica,

I write to clarify, in writing, our counteroffer of settlement:

- RowanSOM will readmit ████ immediately
- ████ will take a 14 week Kaplan USMLE/COMLEX live review course that runs from Jun 5, 2017 - Sep 10, 2017.  We request that Rowan pay for this course ($5,099) ( https://www.kaptest.com/medical-prep/usmle/usmle-prep-course/step-1-comprehensive#enroll-now-live )
- Between the date of his readmission and his completion of the Kaplan course he will have applied for COMLEX accommodations and received a decision from the NBOME
- ████ will sit for the COMLEX within one month of completion of the Kaplan course
- If he is unable to pass the exam after two attempts he will voluntarily withdraw from RowanSOM

- If he passes the exam within two attempts, he will begin rotations as soon as possible

Please let me know if you have any questions.

Regards,

Mary


--------------------------------------
**Mary J. Goodwin, Esq.**
--------------------------------------

**Jo Anne Simon, P.C.**
356 Fulton Street, 3rd Floor
Brooklyn, New York 11201

(T): 718-852-3528
(F): 718-875-5728
(E): Mary@JoAnneSimon.com
(w): www.JoAnneSimon.com


------------------------------
CONFIDENTIALITY NOTICE: The information contained in this e-mail may contain confidential information which is protected by the ATTORNEY-CLIENT PRIVILEGE.The information is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that dissemination, distribution or copying of this information is prohibited. If you have received this communication in error, please notify me by e-mail.

------------------------------

---

**From:** Sabnis, Monica Virmani [sabnis@rowan.edu]
**Sent:** Wednesday, October 26, 2016 9:32 AM
**To:** Mary J Goodwin
**Subject:** ███████████ Rowan University School of Osteopathic Medicine

Good morning! I hope you are feeling better.


I can talk today from 11:30-1:30 and them tomorrow anytime works!


Thanks,

Monica